Case No. 15 cv 6408 (CS)

# United States District Court

## FOR THE

## SOUTHERN DISTRICT OF NEW YORK

◆◆

In re: Congregation Birchos Yosef,

*Debtor.*

## APPENDIX

Y. David Scharf
Joseph T. Moldovan
Robert K. Dakis
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Appellant
    Bais Din of Mechon L'Hoyroa*

REPRODUCED ON RECYCLED PAPER

# TABLE OF CONTENTS

PAGE

Application for Order, dated June 26, 2015 (Dkt No. 67) . . . . . . . . . . . . . . . . . . .  1

Objection to Debtor's Application for Contempt (excerpts),
    dated June 30, 2015 (Dkt No. 73) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Order Granting Debtor's Motion to Enforce Automatic Stay,
    dated July 2, 2015 (Dkt No. 81) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Order Scheduling Hearing, dated June 26, 2015 (Dkt No. 68) . . . . . . . . . . . . .  20

Affidavit of Service, dated June 26, 2015 (Dkt No. 70) . . . . . . . . . . . . . . . . . . .  23

Notice of Appeal, dated July 16, 2015 (Dkt No. 88) . . . . . . . . . . . . . . . . . . . . . .  24

Transcript of July 1 Hearing on Motion to Enforce Automatic Stay
    (Excerpts), dated July 1, 2015 (Dkt No. 86) . . . . . . . . . . . . . . . . . . . . . . . . .  32

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
*Counsel to the Debtor*
369 Lexington Avenue, 12th Floor
New York, New York 10017
Telephone (212) 695-6000

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**In re:**

**CONGREGATION BIRCHOS YOSEF,**

                                     **Debtor.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                     :        **Chapter 11**
                              **Case No. 15-22254 (RDD)**

**APPLICATION FOR AN ORDER HOLDING**
**BAIS CHINUCH L'BONOIS, INC., ABRAHAM SCHWARTZ,**
**YECHIEL YOEL LAUFER, YISROEL DAVID ROTTENBERG,**
**AND ANYONE ACTING IN CONCERT WITH THEM IN CONTEMPT**
**FOR VIOLATION OF THE AUTOMATIC STAY PROVISIONS**
<u>**OF THE BANKRUPTCY CODE (11 U.S.C. § 362)**</u>

**TO: THE HON. ROBERT D. DRAIN, U.S. BANKRUPTCY JUDGE**

      The application of Congregation Birchos Yosef, by its attorney, Douglas J. Pick, Esq.,
respectfully shows and represents:

      1.      Congregation Birchos Yosef (the "Debtor") filed a Chapter 11 proceeding (the
"Petition") with this Court on February 26, 2015.

      2.      The filing of the Petition was precipitated by certain alleged wrongful actions of
the Debtor's former Board of Trustees, acting in concert with persons affiliated with Bais
Chinuch L'Bonois, Inc. ("Bais Chinuch").

1

3.      This is an application by the Debtor for the issuance of an Order to Show Cause and temporary restraining order, and, upon the return date of the underlying motion, that this Court issue an Order (i) determining that Bais Chinuch L'bonois, Inc., Abraham Schwartz ("Schwartz"), Yechiel Yoel Laufer ("Laufer") and Yisroel David Rottenberg ("Rottenberg" and, collectively with Bais Chinuch, Schwartz and Laufer, the "Contemnors") are in contempt of court for their violation of the automatic stay provisions of the U.S. Bankruptcy Code, and for the assessment of actual and punitive damages against them, (ii) vacating a professed post-petition "restraining order" issued by the Rabbinical Court of Mechon L'Hoyroa (the "Rabbinical Court"), which purports to prohibit the Debtor from continuing the prosecution of certain of the adversary proceedings commenced by the Debtor in this Court, (iii) permanently enjoining each of the Contemnors from seeking, and the Rabbinical Court, or any other Rabbinical Authority, from issuing, any "Sirov" (a/k/a "Refusal Letter") as a result of the Debtor's alleged failure to arbitrate the pre-petition claims and issues that are now presented in the adversary proceedings commenced in this Court,  (iv) permanently enjoining the Contemnors from commencing or continuing any Rabbinical Court proceeding against the Debtor or its officers while the Debtor's chapter 11 case is pending,, and (v) granting such other and further relief as may be just and proper.

4.      For the reasons set forth herein, it is respectfully submitted that the Contemnors" have violated the automatic stay provisions of Bankruptcy Code § 362 in commencing claims in a Rabbinical Court, and obtaining a purported "restraining order" ostensibly prohibiting the Debtor from proceeding in certain of the adversary proceedings commenced by Debtor in this Court, notwithstanding the filing of the Petition in bankruptcy.

2

5.      Each of the Contemnors is actually aware of the existence of this chapter 11 action, as all of them are defendants in adversary proceedings heretofore commenced against them in this case.  Moreover, each of those persons is represented by counsel herein.

6.      Notwithstanding their actual knowledge of the existence of this bankruptcy case, and their inclusion as defendants in adversary proceedings commenced herein, the Contemnors contacted the Rabbinical Court of Mechon L'Hoyroa (the "Rabbinical Court") seeking to have the claims and disputes raised in the adversary proceedings submitted to that forum for disposition.  By way of a summons dated June 18, 2015, the Rabbinical Court advised three of the Debtor's officers that the Contemnors had purportedly commenced an arbitration proceeding before that tribunal "regarding the claims that you have between yourselves."  The summons also purported to contain an injunction as follows:

> And we hereby restrict continuing the claims before the secular courts, and you are required to stop immediately the claims, until the matter will be clarified before a Jewish Bais Din.

7.      A copy of the summons, together with an English translation thereof, is annexed hereto and labeled Exhibit "1".  Upon receipt of the same, the Debtor contacted an attorney knowledgeable in both Jewish law and bankruptcy law, Avrom R. Vann, Esq.  On June 22, 2015, Mr. Vann delivered a letter to the Rabbinical Court, advising it as follows (see Exhibit "2" annexed hereto):

> ... by virtue of the provisions of the Bankruptcy Code and the automatic stay therein contained, the institution and prosecution of an Arbitration Proceeding (which is what the law views a Bais Din Proceeding to be) is absolutely prohibited and would be a violation of the Bankruptcy Code and also as I understand it, would be

binding upon the Bais Din under the concept of Dino Demalchuso Dino[1].

8.      Mr. Vann went on to point out to the Rabbinical Court that the Contemnors had

the ability to apply to this Court for a lifting of the stay so that they could pursue claims in

arbitration, or move to compel a determination of their claims in arbitration.  Specifically, Mr.

Vann pointed out as follows:

> … the claimants who have instituted the [arbitration] proceeding
> before Mechon L'Hoyroa are not without a remedy.  They are free
> to go to the Bankruptcy Court sand seek what is known as a relief
> from the automatic stay asking the Bankruptcy Court to allow them
> to proceed before the Beth Din.  If and when the Bankruptcy Court
> gives such an approval, then the claimants in this [arbitration]
> proceeding would be free to proceed before the Beth Din without
> violating the law.

9.      Finally, Mr. Vann advised the Rabbinical Court that "even issuing a Summons to

any of the persons connected with the Bankruptcy Proceeding would be a violation of the

Automatic Stay provisions of the Bankruptcy Code."  Mr. Vann provided the Rabbinical Court

with print-outs of two cases discussing the fact that Bais Din arbitrations fall within the scope of

the automatic stay.[2]

10.     Apparently undeterred by the law as pointed out by Mr. Vann, the Contemnors

pressed forward with their post-petition Rabbinical Court arbitration.  Yesterday, June 24, 2015,

Debtor's officers received another summons – the so-called "Second Invitation" – which

---

[1]   According to the Beth Din of America's "Layman's Guide to Dinei Torah (Beth Din Arbitration Proceedings)," the principal in Jewish law called "dina d'malchusa dina" literally means, "the law of the government is the law."  The Beth Din of America points out that "the exact parameters are somewhat complex, but this means that Jewish law recognizes many secular laws" and that "Bankruptcy laws are often a good example."

[2]   As the Court is well-aware, there are many such cases, but the ones provided by Mr. Vann were *In re Pachman* (1010 Bankr. LEXIS 1221) and *In re Salander-O'Reilly Galleries* (475 B.R. 9, 2012 U.S. Dist LEXIS 95601).

required them to attend the Rabbinical Court arbitration at 10:00 o'clock today, June 25, 2015.
A copy of that summons is annexed hereto and labeled Exhibit "3".

11.   As set forth in the accompanying Affirmation of Debtor's vice-president, if the
Debtor's officers refuse to attend the "scheduled" arbitration proceeding today, a third summons
will be issued, most likely requiring them to attend a session early next week.  If they do not
attend for that third time, a "Refusal Letter" (or, as it is known, a "Sirov") will be issued by the
Rabbinical Court.  Once a *Sirov* is issued it has draconian consequences within the Hassidic
community (of which Debtor's officers are members).[3]  First, it will be publicized in the
newspapers serving the Hassidic community and Debtor's officer will be subject to ridicule and
derision in that community.  Additionally, the Debtor's officer's children would potentially no
longer be permitted to attend school in the community, and the officers themselves would
potentially no longer be permitted to attend religious services in the community.  In effect, the
*Sirov* would be tantamount to excommunicating the Debtor's officers (indeed, its entire
Congregation) from the ultra-religious Hassidic Jewish community.

12.   It is basic Bankruptcy Law that upon the filing of a petition in bankruptcy, an
automatic stay is created which prohibits "the commencement or continuation, including the
issuance or employment of process, of a judicial, administrative, or other action or proceeding
against the debtor that was or could have been commenced before the commencement of the
case" [*see*, 11 U.S.C. § 362(a)(1)].  With exceptions not relevant to the case at bar, it is clear that
the automatic stay "is broad and covers all proceedings against the Debtor, including arbitrations,

---

[3] A *Sirov* is a probationary decree that subjects the recipient to shame, scorn, ridicule and public
ostracism by other members of the Jewish religious community (*see, Leiberman v. Leiberman*,
149 M.2d 983 [S.Ct. Kings Cty. 1991]).

license revocations, administrative proceedings and judicial proceedings" (*see, In re Kaiser Aluminum Corporation*, 303 B.R. 299 [D.Ct. DE 2003] and cases cited therein).

13.     Proceedings in a Rabbinical Courts are recognized as arbitration proceedings and judgments from Rabbinical Courts can be confirmed by a court of the State of New York and converted into a civil judgment against the losing party (*see*, C.P.L.R. § 7500 *et seq.*, and, also, *Spillman v. Spillman*, 273 A.D.2d 316 (2d Dept. 2000) and *Brisman v. Hebrew Academy of the Five Towns of Rockaway*, 2008 W.L. 6949807 (N.Y. Supp.).

14.     The post-petition application of the Contemnors to the Rabbinical Court to summon the Debtor to attend an arbitration regarding pre-petition claims and disputes is clearly a violation of the automatic stay.

15.     The implication of the violations by the Contemnors (by pursuing their claims in the Rabbinical Court), however, have more far-reaching effects than a simple attempt to seek a forum which they likely consider to be more favorable.  They were unquestionably acutely aware that upon the refusal of the Debtor's officers to participate in the arbitration proceedings of the Rabbinical Court (as well they had to given the automatic stay), the Rabbinical Court would issue a *Sirov* which would result in *de facto* excommunication of the Debtor's officers and their families from their religious community.

16.     The blatant attempt by the Contemnors to force Debtor's hand to give up its claims in this Court (and thereby permit the Contemnors and their co-conspirators to avoid the discovery, compliance and enforcement remedies contained in the Federal Rules) is, it is respectfully submitted, a clear, willful and intentional violation of the automatic stay.  By pursuing their pre-petition claims and/or defenses in the Rabbinical Courts, and sanctioning the Rabbinical Courts' issuance of a *Sirov*, with the draconian effect that will have on the Debtor's officers and their

families, the Contemnors knew that they would place the Debtor in the untenable position of either having to forego its lawful remedies in this Court or effectively face excommunication from their religious community. As such, the Contemnors should be found in contempt and sanctioned for their egregious conduct [*see* 11 U.S.C. § 362(k)].

17.     While the Debtor's officers recognizes that they cannot compel the community to be "neighborly" to them, the draconian sanctions of a *Sirov*, with the attendant effect on their innocent families, are clearly designed to compel the Debtor to agree to arbitrate a matter in violation of the automatic stay provisions of the Code. Although it has been held that the issuance of a *Sirov* does not, alone, create the level of duress necessary to permit a court to refuse to confirm an arbitration award pursuant to C.P.L.R. § 7500 *et seq*. (*see, Lieberman v. Liberman, supra*), the demand by the Contemnors to arbitrate, post-petition, pre-petition claims and disputes, with the knowledge that failure to accede to the demand would result in a *Sirov*, rises to the level of an intentional violation of the automatic stay provisions of the Bankruptcy Code for which compensatory and punitive damages are appropriate.

18.     Although it is hard to quantify the damage to the Debtor, and the Debtor's officers and their families, it is respectfully requested that this Court sanction the Contemnors at least in the amount of the Debtor's actual legal fees in having to bring this application before the Court, and assess punitive damages as the Court deems appropriate because the conduct complained of was willful, unjustified, malicious and vindictive.

19.     The proposed Order to Show Cause contains a provision enjoining the Contemnors from pursuing any remedies in the nature of, and the Rabbinical Court from issuing, a *Sirov* (or Refusal Letter) pending a hearing and determination of this application. Such a temporary restraining Order is *absolutely* necessary because, if a *Sirov* is issued while

this motion is pending, the damages will be irreparable and cannot be reversed by anything that this Court might subsequently do.

20.     This matter is brought by Order to Show Cause instead of the usual Notice of Motion as it is a priority that the Court determine at least the permanent injunctive relief requests before irreversible actions are taken.   The Debtor urges that service of this notice by facsimile and overnight mail upon counsel for each of the Contemnors, and on the Rabbinical Court directly by facsimile and by overnight mail, will be sufficient notice. The Debtor will also serve the Office of the U.S. Trustee in a similar fashion.

21.     No prior application for this or similar relief has heretofore been made.

**WHEREFORE**, it is respectfully requested that this Court sign the annexed Order to Show Cause and temporary restraining order, and, upon the return date of this motion, that the Court issue an Order (i) determining that Bais Chinuch, Abraham Schwartz, Yechiel Yoel Laufer and Yisroel David Rottenberg are in contempt for the violation of the automatic stay provisions of the Bankruptcy Code, and for the assessment of actual and punitive damages against them, (ii) vacating a professed post-petition "restraining order" issued by the Rabbinical Court of Mechon L'Hoyroa, which purports to prohibits the Debtor from continuing the prosecution of the adversary proceedings commenced herein, (iii) permanently enjoining Bais Chinuch, Schwartz, Laufer and Rottenberg from seeking, and the Rabbinical Court of Mechon L'Hoyroa, or any other Rabbinical Authority, from issuing, any "Sirov" (a/k/a "Refusal Letter") as a result of Debtor's failure to arbitrate the pre-petition issues now the subject of the adversary proceedings brought in this case, (iv) permanently enjoining Bais Chinuch, Schwartz, Laufer and Rottenberg from commencing or continuing any Rabbinical Court proceeding against

**8**

Debtor or its officers, and (v) granting such other and further relief as to the Court may seem

just and proper.

Dated:      New York, New York
            June 25, 2015

                                        PICK & ZABICKI LLP

                                        By: _____
                                            Douglas J. Pick, Esq.

                                        369 Lexington Avenue, 12th Floor
                                        New York, New York 10017
                                        Telephone (212) 695-6000

                                        *Counsel for Debtor*

**9**

Bais Chinuch L'Bonois Inc. ("Bais Chinuch") and Abraham Schwartz ("Schwartz") ("Defendants"), by their undersigned attorneys, submit this Objection in opposition to the application, _inter alia_, for an Order of contempt for an alleged violation of the automatic stay provisions of 11 U.S.C. § 362 (the "Application").

### Preliminary Statement

The Application for contempt should be denied in its entirety. As demonstrated in Point I, it is black letter law that the automatic stay of 11 U.S.C. § 362 applies to actions against the Debtor _only_ and the rabbinical court's invitation (the "Hazmana," plural, "Hazmanot") was issued to _non-debtors_ for their religiously-objectionable conduct in causing claims to be brought against the Defendants in secular court in violation of Jewish Law and ultra-Orthodox Hasidic community norms. Moreover, as demonstrated in Point II, the Debtor's attempt to use this Court to avoid a "Siruv" - akin to a communal "shunning" which is unenforceable and of no legal effect - violates the "church autonomy doctrine" of the First Amendment to the United States Constitution which prohibits a court from interfering with the workings of a religious tribunal. Finally, as demonstrated in Point III, it would be inappropriate to award damages or impose sanctions upon Defendants in the absence of any showing of "wilfulness" or "maliciousness" and where Defendants had a good faith basis to believe they were not in violation of the bankruptcy stay in pursuing religious proceedings in a rabbinical court against individuals who are not Debtors and have not filed for protection under the Bankruptcy Code.

### Facts

Bais Chinuch is a religious corporation organized and existing in Rockland County under the laws of the State of New York. It operates Bas Melech Girls School, a private school with approximately 300 pre-school to 9th grade students ("Bas Melech"). Bais Chinuch

**10**

has been sued by the Debtor in an adversary proceeding entitled <u>Congregation Birchos Yosef v.</u>
<u>Bais Chinuch L'Bonois, Inc., et ano</u>, bearing Adv.Pro.No. 15-08222 (RDD) ("Adversary
Proceeding I").  Schwartz (along with Yechiel Yoel Laufer ["Laufer"] and Yisroel David
Rottenberg ["Rottenberg"] and others) have also been sued by the Debtor in an adversary
proceeding entitled <u>In re Congregation Birchos Yosef v. Glatzer, et al.</u>, bearing Adv.Pro.No. 15-
08232 (RDD) ("Adversary Proceeding II").  (<u>See</u> Schwartz Dec., ¶¶ 2-3.)

  The Rabbinical Court of Mechon L'Hoyroa (the "Bais Din") is a Jewish rabbinical
tribunal located at 168 Maple Avenue, Monsey, New York.  On June 17, 2015, and June 25,
2015, the Bais Din issued Hazmanot to non-debtors Rabbi Yosef Yechiel Mechel Lebovitz,
Grand Rebbe of Nikolsburg (the "Grand Rebbe"), Mrs. Breindel Lebovitz (the "Rebbetzin"), and
Eliezer Yechezkel Shraga Landau ("Landau") (collectively the "Non-Debtor Individuals").  The
Hazmanot refer to a litigation against Bais Chinuch, Schwartz, Laufer and Rottenberg which
"according to their words, [is] causing them great damages, against the law of the Torah."  The
Hazmanot request that the Non-Debtor Individuals appear before the Bais Din "to arbitrate
according to the religious law of the Torah regarding going to secular court and regarding the
claims that you have between yourselves."  Notably, none of the Non-Debtor Individuals
currently have a valid and binding arbitration agreement with Bais Chinuch, Schwartz, Laufer or
Rottenberg requiring that their disputes be arbitrated before the Bais Din or any other
adjudicative body.

  As the Non-Debtor Individuals have made clear, they adamantly refuse to appear
before the Jewish rabbinical court.  They claim that under the circumstances the Bais Din will
"undoubtedly" issue a third Hazmana and then a "Refusal Letter" or "Siruv" with "draconian

2

**11**

consequences within the Hasidic community." (See Application, dated June 25, 2015, at ¶ 11.)

Such consequences are said to include subjecting the Non-Debtor Individuals to "ridicule and

derision" in the Hasidic community, their children "will no longer be permitted to attend school

in the community," and they "would potentially no longer be permitted to attend religious

services in the community." The Non-Debtor Individuals hyperbolically assert that the "Siruv"

would be "tantamount to excommunicat[ion] . . . from the ultra-religious Hasidic Jewish

community." Id. Significantly, all of the above consequences are "communal" and stem from

the Non-Debtor Individuals' desire to be members in good standing of the Hasidic community,

notwithstanding their desire to flout its norms. Notably absent are any consequences that the

"Siruv" would have upon the Debtor which would interfere with the Chapter 11 Case, including

Adversary Proceedings I and II before this Court.

On June 25, 2015, Debtor applied to this Court for a finding of contempt. The

Application contends that the issuance of a "Siruv" by the Bais Din against the Non-Debtor

Individuals would violate the automatic stay issued in the Debtor's Chapter 11 Case. The

Application further seeks, inter alia, to "permanently enjoin" the Bais Din "or any other

Rabbinical Authorities from issuing any 'Siruv' (a/k/a "Refusal Letter")." As demonstrated

below, Debtor's contention is without merit and the relief it seeks would violate the "church

autonomy doctrine" of the First Amendment to the U.S. Constitution.[1]

---

[1] On June 26, 2015, Debtor's counsel emailed a signed copy of this Court's Order
Scheduling Hearing to the Bais Din with the advice that the "The Order also permanently enjoins
the issuance of any Sirov." Contrary to counsel's egregious misrepresentation, the Order
contains no such "permanent injunction" which would have been in violation of constitutional
law, as noted. (See Ex. A hereto.)

3

**12**

ARGUMENT

I

### THE STAY DOES NOT APPLY TO ACTIONS AGAINST NON-DEBTORS

11 U.S.C. § 362(a)(1) provides that the filing of a petition under Chapter 11 operates as a stay, inter alia, of the commencement of an action "against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case." A "debtor" under the Bankruptcy Code is the "person ... concerning which a case under [the Bankruptcy Code] has been commenced." 11 U.S.C. § 101(12). A "person" is defined to include corporations. 11 U.S.C. § 101(35). Thus, the stay provision of § 362 applies to the Debtor only, not to the Non-Debtor Individuals. See Teachers Insurance & Annuity Association of America v. Butler, 803 F.2d 61, 65 (2d Cir.1986); accord, Ripley v. Mulroy, 80 B.R. 17, 19 (Bankr. E.D.N.Y. 1987) (automatic stay did not extend to president, sole common-stock shareholder, and controlling person of the debtor); In re FPSDA I, LLC, 2012 WL 6681794, at *7 (Bankr. E.D.N.Y. Dec. 21, 2012), as corrected (Dec. 26, 2012) ("the general rule is that the automatic stay only protects the debtor and does not extend injunctive coverage to non-debtor third parties, including equity shareholders and principals of a corporate debtor or an LLC). Accordingly, the Debtor's claim that the automatic stay of § 362 has been violated borders on the frivolous.

Non-debtors may seek the protection of a bankruptcy stay only in "unusual circumstances." Gray v. Hirsch, 230 B.R. 239, 242 (S.D.N.Y. 1999), citing A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir.), cert. den., 479 U.S. 876 (1986). Cases have characterized this "exception" as "a narrow one." In re Bidermann Industries U.S.A., Inc., 200 B.R. 779, 784

4

**13**

addition, there is no claim that continuing with the Bais Din proceeding will interfere with the

bankruptcy.  The sanction that will issue for the Non-Debtor Individuals' refusal to appear before

the Bais Din is a "Siruv," akin to a communal "shunning," which is unenforceable and of no

legal effect, just as the purported "injunction" has no legal effect in the absence of a current valid

and binding arbitration agreement between the parties.[2]

     Thus, Debtor's application should be denied as there has not been any violation of

the automatic stay.[3]

II

THE "CHURCH AUTONOMY DOCTRINE" PRECLUDES A FINDING OF CONTEMPT

     The "church autonomy doctrine" of the First Amendment to the United States

Constitution prohibits courts from interfering with the workings of a religious institution.  See

Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church, 344 U.S. 94 (1952).  The

prerogative of the Bais Din, as a religious institution, to issue a "Siruv" "is a religious act and

thereby, as a general matter, shielded by the First Amendment."  Helfand, "Fighting for the

Debtor's Soul: Regulating Religious Commercial Conduct," 19 Geo. Mason L. Rev. 158, 170

---

[2]  The absence of an arbitration agreement between Bais Chinuch, Schwartz, Laufer and
Rottenberg on the one hand and the Grand Rebbe, the Rebbetzin and Landau on the other,
distinguishes this situation from Spillman v. Spillman, 273 A.D.2d 316 (2d Dept. 2000), and
Brisman v. Hebrew Academy of the Five Towns & Rockaway, 2008 WL 6949807, cited by the
Debtor (Application, at ¶ 13) for the proposition that "judgments from rabbinical Courts can be
confirmed by a court of the State of New York and converted into a civil judgment against the
losing party."  Debtor neglects to advise the Court that Brisman was reversed, albeit on grounds
unrelated to the issues herein.  See 70 A.D.3d 935 (2d Dept. 2010).

[3]  Even were the Debtor to move for an extension of the stay to non-debtors and the Court
found the existence of "unusual circumstances" warranting an extension of the stay, Debtor cites
no case where the stay has been applied retroactively to justify a finding of contempt.

6

**14**

(2011).  As stated in <u>Grunwald v. Bornfreund</u>, 696 F. Supp. 838, 840 (E.D.N.Y. 1988):

> Excommunication is not a harm for which courts will provide a
> remedy, and it is not within the "usages and principles of law," 28
> U.S.C. § 1651(a), for a court to interfere with an excommunication.
> A long line of Supreme Court cases holds that, where a religious
> body adjudicates relations among its members, courts will not
> interfere with the decisions of those bodies made in accordance
> with those bodies' rules.

This constitutional limitation on a court's authority to block a "Siruv" or excommunication

applies to bankruptcy stays under § 362.  As one commentator has recently stated: "It would

appear relatively uncontroversial that, while the shunning of debtors by religious groups may

constitute a prima facie violation of the automatic stay, sanctioning religious groups for shunning

debtors would be unconstitutional under the church autonomy doctrine."  Helfand, "Fighting for

the Debtor's Soul: Regulating Religious Commercial Conduct," 19 Geo. Mason L. Rev. 158,

183-84 (2011).

Of course, the Court need not address this constitutional limitation on its authority

in order to deny the Application since it is not the Debtor who is the subject of the rabbinical

court proceeding, as noted above in Point I.  Thus, in this case, there has not even been "a prima

facie violation" of the automatic stay.[4]

---

[4]  The fact that the "Siruv" here is directed to non-debtors distinguishes <u>In re Pachman</u>,
2010 Bankr. LEXIS 1221 (Bankr. S.D.N.Y. Apr. 14, 2010), a case cited by the Debtor.  That case
is instructive, however, for its recognition of a "novel question of constitutional law" equally
applicable here, <u>to wit</u>, "Does the First Amendment prevent the automatic stay from applying to
proceedings in the rabbinical court?"  <u>Id.</u>, at *7.  While the court in <u>Pachman</u> set a briefing
schedule, the issue was not fully briefed and remained otherwise unaddressed by the Court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                         Chapter 11
                                                               Case No. 15-22254 (RDD)
CONGREGATION BIRCHOS YOSEF,

                                    Debtor.
------------------------------------------------------------x

### ORDER GRANTING DEBTOR'S MOTION TO ENFORCE AUTOMATIC STAY

   Upon the motion, dated June 26, 2015 (the "Motion"), of Congregation Birchos

Yosef, the debtor and debtor in possession herein (the "Debtor"), for an order enforcing the

automatic stay arising in the case under 11 U.S.C. §362(a), and awarding sanctions for the

violation of the automatic stay, against Bais Chinuch L'Bonois, Inc., Abraham Schwartz, Yechiel

Yoel Laufer, Yisroel David Rottenberg (each a "Contemnor" and collectively the "Contemnors")

and anyone acting with them in furtherance of such violation; and there being due and sufficient

notice of the Motion under the circumstances, as provided in the Court's Order dated June  2015;

and upon the objections submitted by the Contemnors and all other pleadings filed in connection

with the Motion; and upon the record of the hearing held by the Court on the Motion on July 1,

2015 (the "Hearing") at which each of the Contemnors and their respective attorneys and the

Debtor and its counsel appeared and were heard;

   And, after due deliberation and for the reasons stated by the Court in its ruling on

the record at the Hearing (at the conclusion of which, at approximately 12:30 p.m., the Court

directed the Contemnors to comply with the relief set forth herein), the Court having found and

concluded that, (a) by initiating and prosecuting after the commencement of this chapter 11 case

a Rabbinical Court or *Bais Din* proceeding (the "*Bais Din*") against officers and principals of the

Debtor (i) to determine the Contemnors' claims against the Debtor and the Debtor's claims

**16**

against them, and (ii) to determine whether such officers and principals of the Debtor, based solely on the conduct of such individuals in their capacity as officers and principals of the Debtor, should be sanctioned for having caused the Debtor to commence and pursue an adversary proceeding in this Court against the Contemnors (the "Adversary Proceeding"), (b) by seeking and obtaining the *Bais Din's* injunction of the Debtor's officers and principals' continued prosecution of the Adversary Proceeding, and (c) by causing the *Bais Din* to threaten the Debtor's officers and principals with a *siruv*, or a communal shunning, if the such individuals do not submit themselves to the *Bais Din's hazmanot*, or summonses, in each instance, along with those acting on their behalf, have violated and are continuing to violate the automatic stay under 11 U.S.C. § 362(a)(1) and (3);

And the Court having further found and concluded that the foregoing violations of the automatic stay were willful for purposes of 11 U.S.C. § 362(k)(1), requiring the imposition of actual damages, including costs and attorneys' fees proximately caused by such violations, and, in appropriate circumstances, punitive damages;

And the Court having further found and concluded that the imposition of coercive sanctions as set forth herein is necessary to compel the cessation of the Contemnors' violation of the automatic stay; and good and sufficient cause appearing for the relief granted herein, it is hereby

**ORDERED**, that the Motion is granted to the extent set forth in this Order, without prejudice to the other relief sought in the Motion; and it is further

**ORDERED, ADJUDGED AND DECREED**, that each of the Contemnors is declared to be in contempt of court for, as set forth herein, having willfully violated the automatic stay arising in this case under 11 U.S.C. § 362(a); and it is further

2

**17**

**ORDERED, ADJUDGED AND DECREED**, that, by not later than 5:00 p.m. (Eastern Daylight Time) on July 2, 2015 (the "Compliance Deadline"), each Contemnor shall (a) take such action as required to (i) discontinue the *Bais Din*, (ii) vacate any and all *hazmanot* and/or *siruv* or other decree or order issued by the *Bais Din* after the commencement of this chapter 11 case concerning the Debtor and/or its officers and principals, and (iii) vacate any restraining order or decree of the *Bais Din* purporting to prohibit the Debtor and/or its officers and principals from continuing the prosecution of the Adversary Proceeding and/or any other litigation to be commenced in this case on behalf of the Debtor's estate; and it is further

**ORDERED, ADJUDGED AND DECREED**, that upon compliance with the foregoing paragraph, the Contemnors shall file with this Court one or more affirmations of compliance with the directives set forth above, including, as an exhibit to such filing, any corresponding documents issued by the *Bais Din* evidencing such discontinuances and/or vacatur; and it is further

**ORDERED, ADJUDGED AND DECREED**, that upon the failure to comply with the directives set forth herein by the Compliance Deadline, each Contemnor shall be liable to the Debtor for a sanction in the amount of $10,000.00 per diem, per Contemnor, commencing on July 3, 2015 and continuing for each day thereafter until such time as all Contemnors come into compliance with this Order; and it is further

**ORDERED, ADJUDGED AND DECREED**, that any *Bais Din* injunction, *siruv* or other order or decree issued after the commencement of this case against the Debtor and/or its officers and principals in furtherance of the Contemnors' violation of the automatic stay as found herein is void *ab initio* and of no force or effect; and it is further

3

**18**

**ORDERED**, that the Court will hold an evidentiary hearing on a date to be obtained by counsel for the parties, but no later than August 30, 2015 (provided, that such hearing may be adjourned on the parties' request), to determine (a) whether the imposition of punitive damages is warranted and (b) the amount of actual and, if warranted, punitive damages for the Contemnors' violation of the automatic stay; and it is further

**ORDERED**, that at least three business days before such hearing, (a) each party shall file and serve, with a copy to chambers, (i) a declaration in lieu of direct testimony of all of its intended witnesses who are under its control, and such witnesses shall be present at the hearing for cross examination and re-direct, and (ii) a list of any witnesses it intends to call who are not under its control, and (b) the parties, having used their good faith efforts to agree on the admissibility of as many proposed exhibits as possible, shall provide chambers with a joint exhibit binder of the exhibits that they intend to seek to have admitted into evidence.

Dated: White Plains, New York
       July 2, 2015

                              _/s/Robert D. Drain_____
                              HON. ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

4

**19**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:                                                          Chapter 11
                                                                Case No. 15-22254 (RDD)
CONGREGATION BIRCHOS YOSEF,


                                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- X


## ORDER SCHEDULING HEARING AND PRESCRIBING NOTICE ON MOTION TO ENFORCE AUTOMATIC STAY

Upon the motion, dated June 26, 2015 (the "Motion"), of the debtor and debtor in possession herein, Congregation Birchos Yosef (the "Debtor") for an order, among other things, scheduling a hearing on shortened notice on the Motion's request for an order enforcing the automatic stay under 11 U.S.C. § 362(a) and awarding sanctions, and upon the accompanying affirmation of Breindy Lebovits; and after due deliberation, sufficient cause having been established for the relief granted herein, it is hereby

**ORDERED**, that the Court will hold a hearing (the "Hearing") at the United States Bankruptcy Court,  300 Quarropas Street, White Plains, NY 10601, on July 1, 2015, at 10:00 a.m. on that portion of the Motion seeking (1) to enforce the automatic stay under 11 U.S.C. § 362(a) and awarding sanctions for willful breach of the automatic stay against Bais Chinuch L'Bonois, Inc. ("Bais Chinuch"), Abraham Schwartz ("Schwartz"), Yechiel Yoel Laufer ("Laufer"), and Yisroel David Rottenberg ("Rottenberg"), and any parties acting in concert with them, including, without limitation, declaring void ab initio a postpetition "restraining order" issued by the Rabbinical Court of Mechon L'Hoyroa, which purports to prohibit the Debtor and its officers from continuing the prosecution of adversary proceedings commenced in this case and otherwise control property of the Debtor's estate, and (2) permanently enjoining Bais

1

Chinuch, Schwartz, Laufer and Rottenberg from (a) seeking, and the Rabbinical Court of Mechon L'Hoyroa, or any other Rabbinical Authorities, from issuing, any "Sirov" (a/k/a "Refusal Letter") as a result of Debtor's not arbitrating prepetition disuptes now presented in adversary proceedings brought in this case, (b) unilaterally commencing or continuing any Rabbinical Court or Rabbinical Authority proceeding against Debtor or its officers pertaining to prepetition claims or controlling prepetition property of the estate, and (3) granting such other and further relief as to the Court may seem just and proper.

**The foregoing parties are on notice that their continuation of any such activities pending the Hearing without having first sought and obtained relief from the automatic stay from this Court under 11 U.S.C. § 362(d) may subject them to compensatory and punitive sanctions as a willful violation of the automatic stay under 11 U.S.C. § 362(a) that came into effect upon the commencement of this chapter 11 case, which shall be subject to a finding of contempt of court.**

And it is further

**ORDERED,** that the Debtor shall cause a copy of this Order and the supporting papers upon which it is made to be served by facsimile, email or overnight mail on or before June 26, 2015 upon (i) Bais Chinuch L'Bonois, Inc. by service upon its attorney, Ira Tokayer, at 42 W 38th St., #802, New York, NY 10018, (ii) Abraham Schwartz, by service upon his attorney, Yitzchak E. Cohen, Esq., 420 Lexington Avenue, New York, NY 10170, (iii) Yechiel Yoel Laufer by service upon his attorney, Sari Kolatch, Esq., Cohen Tauber Spievack & Wagner, P.C., 420 Lexington Ave., Suite 2400, New York, NY 10170, and Yisroel David Rottenberg by service upon its attorney, Edward L. Schnitzer, Esq., Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, and upon the Rabbinical Court of Mechon L'Hoyroa, 168

2

**21**

Maple Avenue, Monsey, NY  10952, , and that such service shall be shall be deemed good and

sufficient notice of the Hearing and the relief to be considered at the Hearing; and it is further

      **ORDERED**, that any written response to the Motion shall be filed and served on

so counsel for the Debtor (with a copy to the Court's chambers), so as to be received by 5:00

p.m. on June 30, 2015.  The Court will hear oral objections at the Hearing.


Dated:  White Plains, New York
       June 26, 2015


                            /s/Robert D. Drain
                           HON. ROBERT D. DRAIN
                           U.S. BANKRUPTCY JUDGE
                           SOUTHERN DISTRICT OF N.Y.

3

**22**

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                                          Chapter 11
CONGREGATION BIRCHOS YOSEF,                  Case No. 15-22254 (RDD)

                          Debtor.                        **AFFIDAVIT OF SERVICE**
------------------------------------------------------x

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

ERIC C. ZABICKI, being duly sworn, deposes and says:

I am not a party to the action.  I am over the age of eighteen years and reside in

Fairfield County, Connecticut.

On June 26, 2015, I served that certain *Order to Show Cause* entered in the above-

captioned matter on June 26, 2015, together with all supporting papers: (1) via email upon: (a) Ira

Tokayer, Esq. (imtoke@mindspring.com); (b) Yitzchak E. Cohen, Esq. (ycohen@zlitigator.com);

(c) Sari Kolatch, Esq. (skolach@ctswlaw.com); and (d) Edward L. Schnitzer, Esq.

(eschnitzer@hahnhessen.com); and (2) via overnight mail upon the Rabbinical Court of Mechon

L'Hoyroa, 168 Maple Avenue, Monsey, New York 10952, by retaining the courier services of

Federal Express to deliver same under Airbill No. 8079 2528 0177.

                                        _____
                                              ERIC C. ZABICKI

Sworn to before me this
26 day of June, 2015

DOUGLAS J. PICK
Notary Public, State of New York
No. 02PI4766015
Qualified in New York County
Commission Expires Feb. 28, 20__

**23**

MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600
Joseph T. Moldovan
Robert K. Dakis
Attorneys for *Bais Din of Mechon L'Hoyroa*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Chapter 11

                                                                    Case No. 15-22254 (RDD)

CONGREGATION BIRCHOS YOSEF,
Debtor.
-----------------------------------------------------------x

### NOTICE OF APPEAL

Bais Din of Mechon L'Hoyroa (the "Appellant") by and through its undersigned attorneys hereby appeal to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §158(a) from the Order Granting the Debtor's Motion To Enforce The Automatic Stay (the "Order"), which was entered on the Bankruptcy Court's docket on July 2, 2015 as Docket No. 81. A true and correct copy of the Order is attached hereto as Exhibit "A."

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective counsel are as follows:

(The remainder of this page is intentionally blank.)

1

**24**

Appellant and Counsel:

Joseph T. Moldovan, Esq.
Robert K. Dakis, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600
bankruptcy@morrisoncohen.com

Mark David Graubard, Esq.
Kera & Graubard
240 Madison Avenue, 7th Floor
New York, New York 10016-2820
(212) 681-1600
Email: dgraubard@keragraubard.com
Email: martin.kera@gmail.com


*Attorneys for Bais Din of Mechon L'Hoyroa*

Appellee and Counsel:

Douglas J. Pick, Esq.
Pick & Zabicki LLP
369 Lexington Avenue, 12th Floor
New York, NY 10017
(212) 695-6000
Fax : (212) 695-6007
Email: dpick@picklaw.net

*Attorney for Congregation Birchos Yosef, Chapter 11 Debtor-in-Possession*

Michael T. Driscoll, Esq.
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
212-510-0538
Fax : 212-668-2255
Email: michael.driscoll@usdoj.gov
*Trial Attorney for the Office of the U.S. Trustee*

2

**25**

Interested Parties and Counsel:

Edward L. Schnitzer, Esq.
Jeffrey Zawadzki, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
(212) 478-7215
Fax : (212) 478-7400
Email: eschnitzer@hahnhessen.com

*Attorney for Yisroel David Rottenberg*

Stephen Wagner, Esq.
Sari E. Kolatch, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, NY 10170
Telephone: (212) 586-5800
Fax: (212) 586-5095
swagner@ctswlaw.com
skolatch@ctswlaw.com

*Attorneys for Yechiel Yoel Laufer*

Ira Daniel Tokayer, Esq.
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 695-5250
imtoke@mindspring.com

*Attorney for Bais Chinuch L'Bonois, Inc.*

Yitzchak E. Cohen, Esq.
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 280-7200
Email: ycohen@zlitigator.com

*Attorney for Abraham Schwartz*

3

**26**

Dated: New York, New York
July 16, 2015

**MORRISON COHEN LLP**

By      /s/ Joseph T. Moldovan
Joseph T. Moldovan
Robert K. Dakis
909 Third Avenue
New York, NY 10022
(212) 735-8600
bankruptcy@morrisoncohen.com

*Attorneys for Bais Din of Mechon L'Hoyroa*

4

**27**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                                    Chapter 11
                                                          Case No. 15-22254 (RDD)
CONGREGATION BIRCHOS YOSEF,

                                    Debtor.
--------------------------------------------------------------x

### ORDER GRANTING DEBTOR'S MOTION TO ENFORCE AUTOMATIC STAY

    Upon the motion, dated June 26, 2015 (the "Motion"), of Congregation Birchos

Yosef, the debtor and debtor in possession herein (the "Debtor"), for an order enforcing the

automatic stay arising in the case under 11 U.S.C. §362(a), and awarding sanctions for the

violation of the automatic stay, against Bais Chinuch L'Bonois, Inc., Abraham Schwartz, Yechiel

Yoel Laufer, Yisroel David Rottenberg (each a "Contemnor" and collectively the "Contemnors")

and anyone acting with them in furtherance of such violation; and there being due and sufficient

notice of the Motion under the circumstances, as provided in the Court's Order dated June  2015;

and upon the objections submitted by the Contemnors and all other pleadings filed in connection

with the Motion; and upon the record of the hearing held by the Court on the Motion on July 1,

2015 (the "Hearing") at which each of the Contemnors and their respective attorneys and the

Debtor and its counsel appeared and were heard;

    And, after due deliberation and for the reasons stated by the Court in its ruling on

the record at the Hearing (at the conclusion of which, at approximately 12:30 p.m., the Court

directed the Contemnors to comply with the relief set forth herein), the Court having found and

concluded that, (a) by initiating and prosecuting after the commencement of this chapter 11 case

a Rabbinical Court or *Bais Din* proceeding (the "*Bais Din*") against officers and principals of the

Debtor (i) to determine the Contemnors' claims against the Debtor and the Debtor's claims

**28**

against them, and (ii) to determine whether such officers and principals of the Debtor, based solely on the conduct of such individuals in their capacity as officers and principals of the Debtor, should be sanctioned for having caused the Debtor to commence and pursue an adversary proceeding in this Court against the Contemnors (the "Adversary Proceeding"), (b) by seeking and obtaining the *Bais Din's* injunction of the Debtor's officers and principals' continued prosecution of the Adversary Proceeding, and (c) by causing the *Bais Din* to threaten the Debtor's officers and principals with a *siruv*, or a communal shunning, if the such individuals do not submit themselves to the *Bais Din's hazmanot*, or summonses, in each instance, along with those acting on their behalf, have violated and are continuing to violate the automatic stay under 11 U.S.C. § 362(a)(1) and (3);

And the Court having further found and concluded that the foregoing violations of the automatic stay were willful for purposes of 11 U.S.C. § 362(k)(1), requiring the imposition of actual damages, including costs and attorneys' fees proximately caused by such violations, and, in appropriate circumstances, punitive damages;

And the Court having further found and concluded that the imposition of coercive sanctions as set forth herein is necessary to compel the cessation of the Contemnors' violation of the automatic stay; and good and sufficient cause appearing for the relief granted herein, it is hereby

**ORDERED**, that the Motion is granted to the extent set forth in this Order, without prejudice to the other relief sought in the Motion; and it is further

**ORDERED, ADJUDGED AND DECREED**, that each of the Contemnors is declared to be in contempt of court for, as set forth herein, having willfully violated the automatic stay arising in this case under 11 U.S.C. § 362(a); and it is further

**ORDERED, ADJUDGED AND DECREED**, that, by not later than 5:00 p.m. (Eastern Daylight Time) on July 2, 2015 (the "Compliance Deadline"), each Contemnor shall (a) take such action as required to (i) discontinue the *Bais Din*, (ii) vacate any and all *hazmanot* and/or *siruv* or other decree or order issued by the *Bais Din* after the commencement of this chapter 11 case concerning the Debtor and/or its officers and principals, and (iii) vacate any restraining order or decree of the *Bais Din* purporting to prohibit the Debtor and/or its officers and principals from continuing the prosecution of the Adversary Proceeding and/or any other litigation to be commenced in this case on behalf of the Debtor's estate; and it is further

**ORDERED, ADJUDGED AND DECREED**, that upon compliance with the foregoing paragraph, the Contemnors shall file with this Court one or more affirmations of compliance with the directives set forth above, including, as an exhibit to such filing, any corresponding documents issued by the *Bais Din* evidencing such discontinuances and/or vacatur; and it is further

**ORDERED, ADJUDGED AND DECREED**, that upon the failure to comply with the directives set forth herein by the Compliance Deadline, each Contemnor shall be liable to the Debtor for a sanction in the amount of $10,000.00 per diem, per Contemnor, commencing on July 3, 2015 and continuing for each day thereafter until such time as all Contemnors come into compliance with this Order; and it is further

**ORDERED, ADJUDGED AND DECREED**, that any *Bais Din* injunction, *siruv* or other order or decree issued after the commencement of this case against the Debtor and/or its officers and principals in furtherance of the Contemnors' violation of the automatic stay as found herein is void *ab initio* and of no force or effect; and it is further

3

**30**

ORDERED, that the Court will hold an evidentiary hearing on a date to be obtained by counsel for the parties, but no later than August 30, 2015 (provided, that such hearing may be adjourned on the parties' request), to determine (a) whether the imposition of punitive damages is warranted and (b) the amount of actual and, if warranted, punitive damages for the Contemnors' violation of the automatic stay; and it is further

ORDERED, that at least three business days before such hearing, (a) each party shall file and serve, with a copy to chambers, (i) a declaration in lieu of direct testimony of all of its intended witnesses who are under its control, and such witnesses shall be present at the hearing for cross examination and re-direct, and (ii) a list of any witnesses it intends to call who are not under its control, and (b) the parties, having used their good faith efforts to agree on the admissibility of as many proposed exhibits as possible, shall provide chambers with a joint exhibit binder of the exhibits that they intend to seek to have admitted into evidence.

Dated: White Plains, New York
July 2, 2015

_/s/Robert D. Drain_____
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

```
                    UNITED STATES BANKRUPTCY COURT
1                   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------
    In re:                                  Case No. 15-22254-rdd
3                                           White Plains, New York
        CONGREGATION BIRCHOS YOSEF,         July 1, 2015
4                            Debtor.        10:51:28 a.m. - 1:04:36 p.m.
    ------------------------------------
5   CONGREGATION BIRCHOS YOSEF,
6                      Plaintiff,
7           v.                              Adv. Proc. No. 15-08222-rdd
    BAIS CHINUCH L'BONOIS, INC. et al,
8                      Defendant.
    ------------------------------------
9                         - TRANSCRIPT -
10     15-22254-RDD - CONGREGATION BIRCHOS YOSEF - CHAPTER 11
11
    OBJECTION TO MOTION / OBJECTION OF YISROEL DAVID ROTTENBERG
12  TO APPLICATION FOR AN ORDER HOLDING BAIS CHINUCH L'BONOIS,
13  INC., ABRAHAM SCHWARTZ, YECHIEL YOEL LAUFER, YISROEL DAVID
14     ROTTENBERG, AND ANYONE ACTING IN CONCERT WITH THEM IN
    CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY PROVISIONS OF
15     THE BANKRUPTCY CODE (11 USC §362) (RELATED DOCUMENT 67)
16
    ORDER TO SHOW CAUSE ON MOTION TO ENFORCE AUTOMATIC STAY
17                    (RELATED DOCUMENT 67)
18
    OBJECTION TO MOTION FOR CONTEMPT (RELATED DOCUMENT 67)
19
20   ADVERSARY PROCEEDING: 15-08222-RDD, CONGREGATION BIRCHES
         YOSEF VS. BAIS CHINUCH L'BONOIS, INC. ET AL
21  CONFERENCE RE: PROTECTIVE ORDER GOVERNING EXAMINATION AND
22      REVIEW OF ELECTRONIC DATA (RELATED DOCUMENT 31)
23
         BEFORE THE HONORABLE ROBERT D. DRAIN
24          UNITED STATES BANKRUPTCY JUDGE
25
```

**32**

```
A P P E A R A N C E S :
```

1

*For the Debtor:*          DOUGLAS J. PICK, ESQ.
                          Pick & Zabicki, LLP

2                          369 Lexington Avenue, 12th Floor
                          New York, New York 10017

3                          (212) 695-6000; (212) 695-6007 fax

4

                          CHASKEL LANDAU, Debtor Principal

5

*For Zirchon Menochum:*    ELIZABETH A. HAAS, ESQ.

6                          254 South Main Street, Suite 210
                          New City, New York 10956

7                          (845) 708-0340; (845) 708-5622 fax

8

*For David Rottenberg:*    EDWARD LEE SCHNITZER, ESQ.
                          Hahn & Hessen LLP

9                          488 Madison Avenue, #14
                          New York, New York 10022-5702

10                         (212) 478-7200; (212) 478-7400 fax

11

*For Abraham Schwartz:*    YITZCHAK E. COHEN, ESQ.
                          The Graybar Building

12                         420 Lexington Avenue, Suite 2400
                          New York, New York 10170

13                         (212) 280-7200; (212) 280-4143 fax

14

*For Bais Chinuch*         IRA DANIEL TOKAYER, ESQ.

15 *L'Bonois, Inc.:*        420 Lexington Avenue, Suite 2400
                          New York, New York 10170

16                         (212) 695-5250; (212) 695-5450 fax

17

*For Yechiel Laufer:*      STEPHEN WAGNER, ESQ.
                          Cohen Tauber Spievack & Wagner LLP

18                         420 Lexington Avenue, Suite 2400
                          New York, New York 10170

19                         (212) 695-5800; (212) 586-5095 fax

20

*For the Beis Din*         MARK DAVID GRAUBARD, ESQ.

21 *Mechon L'Hora'ah:*      Kera & Graubard
                          240 Madison Avenue, 7th Floor

22                         New York, New York 10016-2820
                          (212) 681-1600

23

*Transcriber:*             AA Express Transcripts

24                         (888) 456-9716; (888) 677-6131 fax
                          aaexpress@court-transcripts.net

25

          *(Proceedings recorded by electronic sound recording)*

**33**

In re Congregation Birchos Yosef - 7/1/15                    4

1    I'm just here to see what's going on.

2           THE COURT:  Unless you want to get some money for your

3    client.

4           MS. HAAS:  Well, that's my primary reason for being

5    here --

6           THE COURT:  Right.

7           MS. HAAS:  -- is because we're trying to get our

8    money.

9           THE COURT:  Right.  Okay.  All right.  And the other

10   part is you're representing the entity and individuals who are

11   asserted by the Debtor to have violated the automatic stay, and

12   continue to be violating the automatic stay.  And then there's

13   the Beis Din, which I guess who is either looking for

14   instruction on this or -- well, I'll from you, Mr. Graubard, on

15   your position on it.  Okay.  Everyone can sit down unless

16   they're speaking.

17          MR. PICK:  Thank you, Your Honor.  This is a motion by

18   the Debtor to enforce the automatic stay, and an award of

19   sanctions for willful breach of the automatic stay against the

20   Bais Chinuch L'Bonois, Ms. Schwartz, Mr. Laufer, Mr. Rottenberg,

21   and any other parties that may work in concert with them.  We're

22   also seeking to declare *ab initio*, a post-petition restraining

23   order, entitled "The Written invitation" or an ekul, issued by

24   the Rabbinical Court of Mechon L'Hora'ah, which is represented

25   by Mr. Graubard here today, which seeks to prohibit the Debtor

34

In re Congregation Birchos Yosef - 7/1/15                    5

1  and its officers from continuing its prosecution of the

2  adversary proceedings.

3          We're also seeking an injunction permanently enjoining

4  Bais Chinuch, Mr. Schwartz, Mr. Laufer and Mr. Rottenberg from

5  seeking a rabbinical court to issue a sirov, that's a refusal

6  letter; as a result of the Debtor's refusal to arbitrate all

7  matters in the rabbinical court.

8          THE COURT:  That's S-I-R-O-V?

9          MR. PICK:  S-I-R-O-V.

10         THE COURT:  Right.  Okay.

11         MR. PICK:  By way of background, Your Honor, this

12 action really pertains to -- the request pertains to a pending

13 action that we had filed in this court.  Your Honor may recall

14 on February 26, we filed a Chapter case.  On May 1, we filed a

15 45-page complaint against the former board on Mr. Schwartz, Mr.

16 Laufer, Mr. Rottenberg, among others, for fraud, monetary

17 damages, exemplary damages and punitive damages.

18         On April 4, three days later, the summons and

19 complaint was issued.  We served it.  Everybody had requested an

20 extension of time to answer it through July 6.  Mr. Laufer's

21 attorney has sought additional time, to the end of the month,

22 and has asserted that we served the wrong address, and had

23 asserted that the summons had expired.  Asserted every reason on

24 earth for additional time.  Rather than fight that fight, we

25 granted them the additional time.

**35**

1        THE COURT:  Right.

2        MR. SCHNITZER:  So in theory that would be a separate

3   hearing.  But where the discussion would be as to whether what

4   damages were actually suffered here.  But I think that it also

5   goes to the issue of what my client understood.  Because in

6   terms of willfulness and a maliciousness, I do believe that is

7   something that the Court can consider.

8        THE COURT:  For the issue of punitive damages.

9        MR. SCHNITZER:  Yes.

10       THE COURT:  Okay.  But not compensatory damages.

11       MR. SCHNITZER:  That would be correct, Your Honor.

12       THE COURT:  Okay.  Thank you.

13       MR. TOKAYER:  Your Honor, as we raised in our brief,

14   it's our belief and it's our view that extending the stay to

15   rabbinical proceedings that were instituted by the accused in

16   this case for inviting the non-Debtor individuals to clarify

17   what the parties' obligations are under Jewish law, raise First

18   Amendment issues that are very complicated, that we tried to

19   address in our papers in the two days that we had.  We tried to

20   do it as well as we could.

21       I think that this is an issue that really needs to be

22   briefed.  It probably requires expert submissions.  It may even

23   invite amicus briefs.  We believe that the beis din has the

24   right to invite members of the ultra-orthodox community to the

25   beis din to answer for their obligations under Jewish law

In re Congregation Birchos Yosef - 7/1/15                    22

1   irrespective of what may happen in the bankruptcy proceeding

2   between the Debtor and the individuals.  And that those issues

3   of Jewish law cannot be enjoined; that the beis din cannot

4   enjoined from addressing those issues.

5          And a sirov, which is only a communal shunning, is

6   actually protective activity by the beis din in that case.  Even

7   if there were to be a stay or *prima facie* violation of a stay

8   that this court would not be able to issue sanctions

9   respectfully; that it would not be able to enjoin the sirov,

10  which is just a document that says that they're not allowed to -

11  - it's a document that says that they did not appear.  Nor would

12  this Court be able to enjoin them and enjoin the beis din from

13  pronouncing whether or not these individuals, who went to

14  secular court without the pre-authority of the beis din, are or

15  not members of the community in good standing.

16         THE COURT:  Okay.  Well, do you have any other

17  arguments besides the arguments that were made by your colleague

18  or whether the automatic stay applies?  I'm trying to unpack

19  that issue from the First Amendment issue or the free exercise

20  issue.

21         MR. TOKAYER:  Yes, I do, Your Honor.  Your Honor,

22  raised the identity of issues, and I think that is the important

23  issue in the case.  In order to extend the stay to non-debtors,

24  there has to be unusual circumstances.  And one of the factors

25  the court looks at is whether or not there's an identity of

1  don't go beyond that at least in the first instance.

2         MR. PICK:  I understand what Your Honor's saying.

3         THE COURT:  Okay.

4         MR. PICK:  I would assume that they've heard what Your

5  Honor has to say and there'll be no further hazmanos being

6  issued.  We certainly would like the previous issued hazmana

7  vacated, and indeed void *ab initio*.

8         THE COURT:  Well, yeah, that's just a matter of

9  operation of law.

10         MR. PICK:  Otherwise --

11         THE COURT:  I'm just reacting to counsel's statement

12  that "the Debtor is looking to enjoin the beis din" going

13  forward.  When that type of relief generally raises hackles with

14  courts being asked to issue an injunction, which is why I spend

15  a few minutes on it.

16         MR. PICK:  I have no problem with placing on the

17  record today that we withdraw the request for a permanent

18  injunction of any further issues of hazmanos based on the fact

19  that they understand that there's an automatic stay in effect.

20  If they want to proceed to obtain the relief from the automatic

21  stay, they can do so appropriate motion.

22         THE COURT:  Okay.  All right.  So I interrupted you.

23  Do you have anything more on this?

24         MR. PICK:  Nothing further, Your Honor.

25         THE COURT:  Why isn't this relief, 'A', of general and

1  neutral applicability?  It's not aimed at religion specifically.

2  The automatic stay is not aimed at religion.

3       MR. TOKAYER:  The only consequence that the Debtor has

4  identified in this case is that a sirov will issue because they

5  refuse to appear before the beis din.

6       THE COURT:  Right.

7       MR. TOKAYER:  And in my view that sirov does not

8  affect the Debtor's ability to proceed in the bankruptcy court.

9       THE COURT:  No, but I'm focusing on the underlying law

10 in conflict with the free exercise of the Jewish religion, which

11 is the automatic stay.  The automatic stay doesn't just apply

12 Orthodox Jews, right?  It applies to any party that is covered

13 by 362(a) of the Bankruptcy Code.

14      MR. TOKAYER:  I think 362, we are objecting to its

15 application here, not to the general unconstitutionality of that

16 statute.

17      THE COURT:  But it's not aimed at any particular

18 group.  It's aimed at anyone who takes the actions that are

19 prohibited in it.

20      MR. TOKAYER:  Our issue is as applied.

21      THE COURT:  Okay.  And how is the stay, the

22 enforcement of the stay, overly broadly tailored here to achieve

23 that interest?  Is there some other way that the Debtors could

24 obtain the protection of the automatic stay short of what

25 they're seeking?  To me it's a tautology.  The automatic stay is

1   a stay.  How can you obtain the protection of a stay without

2   obtaining the protection of a stay?  Is there any other way to

3   get the type of relief that the Debtors are seeking here that

4   would give more exercise of religion to the Debtors?

5           MR. TOKAYER:  I really haven't considered that, Your

6   Honor.

7           THE COURT:  Well, I mean that's the analysis under the

8   free exercise cases.

9           MR. TOKAYER:  I could let my colleague speak to that.

10          THE COURT:  Okay.

11          MR. TOKAYER:  -- and I can give that some additional

12  thought.

13          THE COURT:  Does anyone have anything to say on that

14  issue?

15          MR. SCHNITZER:  Is there another way to skin the cat

16  basically?

17          THE COURT:  Right.  To protect the Debtor from being

18  able to centralize the litigation in the bankruptcy court?

19          MR. SCHNITZER:  Well, it seems to me, Your Honor, that

20  if the hazmana was modified to make clear that it was not

21  interfering with the Debtor proceeding against these individuals

22  in court, and that it was directed only to the standing of these

23  people in the community, then I think that that would satisfy

24  both the First Amendment, as well as the bankruptcy law.

25          THE COURT:  Well, I guess what strikes me on that is

**40**

In re Congregation Birchos Yosef - 7/1/15                    67

1     THE COURT:  You don't need to answer that question!

2  I've already heard enough about threats here, and it sickens me!

3  It sickens me!  You're talking about children!  You're talking

4  about education.  I know this is about money.  You should be

5  able to figure out how to settle money.  But threatening

6  children?  That's not religion.  That's sickening.

7     THE WITNESS:  If Your Honor will give me permission?

8     THE COURT:  No, I've had enough, sir.  You can step

9  down.

10     THE WITNESS:  Thank you.

11     THE COURT:  I going to take a five minute break.  I

12  have rarely been as angry in 14 years on the bench!  You

13  gentlemen, go back to religion!  How does religion treat

14  children?

15     (Off the record.)

16     COURTROOM DEPUTY:  All rise!

17     THE COURT:  Please be seated.  All right.  We're back

18  on the record in Congregation Birchos Yosef.  Does anyone have

19  anything more to say?

20     (No response.)

21     THE COURT:  All right.  I'm going to give you my

22  ruling then.  I have before me a motion brought on by order to

23  show cause on short notice to enforce in this case the automatic

24  stay under 11 USC §362(a) against certain named individuals and

25  those acting with them.  With respect to post-bankruptcy

**41**

1  invocation of a beis din proceeding against certain principals

2  of the Debtor.  It's clear from the record of this hearing, as

3  well as the exhibits submitted with the motion that after this

4  case, this bankruptcy case, was commenced, the Debtor also

5  commenced an adversary proceeding against the individuals and

6  institute, Bais Chinuch, asserting various claims on behalf of

7  the Debtor's estate.

8         After the commencement of that adversary proceeding on

9  behalf of the Debtor's estate Bais Chinuch and named Defendants,

10  who are the target of the present motion invoked a beis din,

11  which invited or issued a hazmana to principals of the Debtor,

12  though not the Debtor itself, to enjoin them to through an ekul

13  from pursuing the bankruptcy court litigation, and warn them

14  that if they did not participate in the beis din, they could be

15  subject to a sirov, which (indiscernible) agreement at a minimum

16  constitutes a shunning by the community, and, frankly, by

17  potentially all Orthodox Jews in light of a failure to comply

18  with the summons or invitation of the beis din.

19         The Debtors through separate counsel, Mr. Van, advised

20  in writing those who invoked the beis din that what they had

21  done was in violation of the automatic stay, and that they

22  should cease pursuing it.  And secondly, that the ekul was void

23  *ab initio* as a violation of the automatic stay.  Notwithstanding

24  that warning, and Bais Chinuch, which I'll refer to as the

25  school, and the other individuals' knowledge of the commencement

1   of this case, which they had before Mr. Van warned them, they

2   did not cease invoking, the beis din did not withdraw their

3   request.  And in fact, the beis din issued a second invitation,

4   a second hazmana.  Again, warning of the consequences, or the

5   potential consequences of ignoring the invitation; i.e., a

6   sirov.

7           As a result, the Debtor has again sort to enforce the

8   automatic stay, and in addition the imposition both actual

9   damages and punitive damages.  Because the automatic stay is

10  just that; i.e., automatic, it came into effect at the

11  commencement of this case.  It's automatic in light of

12  Congress's determination that having an automatic stay of all

13  activity to the extent set forth in §362(a), including as is

14  most relevant here, §362(a)(3) any act to obtain possession of

15  property of the estate or property from the estate or to

16  exercise control over property of the estate is a fundamental

17  protection not only of the Debtor, but also of the Debtor's

18  estate and creditors.

19          The automatic stay is the primary, in fact, protection

20  of the Debtor's estate during the course of a bankruptcy case,

21  just as the Debtor's discharge is the primary protection of the

22  Debtor at the end of the case.  That primary protection is, as I

23  said, not only for the benefit of the Debtor, but also the

24  Debtor's creditors.  It ensures an orderly process for

25  determining the assets and liabilities of the Debtor and

**43**

1    amassing and turning into value the estate's assets for

2    distribution to creditors without having a race to the

3    courthouse, and to do so in the most efficient and economical

4    way where being in bankruptcy every dollar counts.

5              It is clear from the facts and frankly undisputed,

6    that the issues to be determined by the beis din as set forth in

7    the hazmana pertain to the Debtor's principals' commencement and

8    continued prosecution of the adversary proceeding in this case.

9    As well as any other claims between the parties.  Although I

10   believe it was acknowledged during oral argument that those

11   claims would not be claims between those who invoked the beis

12   din and the Debtor's principals, but rather claims between those

13   who invoked the beis din and the Debtor.

14             Consequently, in addition to seeking to control

15   property of the estate (i.e. the adversary proceeding that the

16   Debtor had brought before the invocation of the beis din in this

17   Court), it appears to me that the beis din also would violate

18   §362(a)(1) of the Bankruptcy Code which stays automatically on

19   the commencement of the case the commencement, including the

20   issuance or employment of process of a judicial administrative

21   or other action or proceeding against the Debtor that was or

22   could have been commenced before the commencement of the case

23   under this title.  Or to recover a claim against the Debtor that

24   arose before the commencement of the case under this title.

25             The individuals and school that invoked the beis din

**44**

1  have responded by contending that the beis din only sought

2  relief against the principals of the Debtor and not the Debtor

3  itself, and therefore that §362(a)(1) and (a)(3) were not

4  violated.  This is incorrect as a matter of law.  It is crystal

5  clear from the hazmanos themselves, as well as the factors set

6  forth on the record today that the relief sought in the beis din

7  against the Debtor's principals is sought solely because of

8  their actions as the Debtor's principals.  They were not

9  separately acting in their own behalf in other words to give

10  rise to the basis for the beis din, but it was only in their

11  actions directing the Debtor to do what the Debtor has done that

12  is the basis for the invocation of the beis din.

13          Given that obvious factor, it is equally obvious that

14  the action of the individuals and the school and invoking the

15  beis din and the beis din's ekul or injunction, are in fact

16  directed at the Debtor through its principals.  It is

17  effectively an action against the Debtor given the identity of

18  the issues at stake and that these individuals are being called

19  before the beis din solely because of their actions as

20  principals of the Debtor.

21          Under well-established case law, consequently the fact

22  that nominally the actions were against the Debtor's principals

23  (i.e. third parties as opposed to the Debtor) is of no legal

24  affect.  See *Queenie, Ltd. v. Nygard International*, 321 F.3d

25  282, 288 (2d Cir. 2003), *In re North Star Contracting Corp.*, 125

In re Congregation Birchos Yosef - 7/1/15                72

1   B.R. 368 (E.D.N.Y. 1995), *In re Lomas Financial Corporation*, 117

2   B.R. 64 (S.D.N.Y. 1990), and *In re Delphi Corporation*, Case

3   Number 05-4481-rdd, transcript of the court's ruling, April 2007

4   at pages 33-40.

5        The automatic stay therefore clearly applied to this

6   litigation.  There is no need consequently for the Debtor to

7   seek injunctive relief under the standard required for a

8   preliminary injunction to protect these individuals as the Court

9   would have the power to do under appropriate circumstances.  See

10  *In re Calpine Corp.*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006)

11       The very case law cited for the proposition that the

12  automatic stay doesn't apply here recognizes the distinction

13  between bringing a position against principals of the Debtor,

14  it's officers or directors based on their status and actions as

15  officers and directors, which is effectively an action against

16  the Debtor and therefore subject to the automatic stay.  And on

17  the other hand, actions against third parties who may be

18  officers and directors based on separate conduct by those

19  parties giving rise to separate and independent claims.  See for

20  example, *DeSouza v. PlusFunds Group Inc.*, 2006 U.S. Dist. LEXIS

21  53392, (August 1, 2006) *7-8.

22       Accordingly, then Judge Sotomayor's ruling in *Queenie*

23  *v. Nygard*, and the other authorities I've cited makes it clear,

24  and frankly, this is an obvious case for doing so, that the

25  automatic stay to the invocation of the beis din and the beis

**46**

1    din's injunction of the officers.  Logically, if that were not

2    the case, there would be such an enormous hole in the automatic

3    stay that it would have no force whatsoever; i.e., parties in

4    interest in bankruptcy cases could get around it simply by suing

5    the Debtor' principals for actions they took in that capacity.

6           So the first part of the Debtor's relief is granted

7    here.  That is a declaration that the automatic stay applies to

8    the complained of activity; that that activity is still subject

9    to the automatic stay; and that the issuance of the ekul and any

10   future issuance of any ruling by the beis din where there's an

11   ekul or a sirov is void *ab initio* under the second circuit case

12   law that I've cited.

13          This hearing was not a hearing to actually determine

14   the damages and whether any punitive damages should lie for

15   breach of the automatic stay, but it is clear to me that at a

16   minimum actual damages would need to be considered.

17   Notwithstanding the protestations in various of the objectors'

18   responses to the motion, whether or not they reasonably believed

19   that the automatic stay did not apply does not protect them from

20   the imposition of actual damages caused by such violation.

21          Under §362(k)(1) of the Bankruptcy Code, which

22   provides exceptions provided in paragraph 2.  An individual

23   injured by any willful violation of a stay provided by this

24   section shall recover actual damages, including costs and

25   attorney's fees, and in appropriate circumstances, may recover

1  punitive damages.  The exception states in Section 2, if such

2  violation is based on an action taken by an entity and the good

3  faith belief that Subsection H applies to the Debtor.

4  Subsection H here, clearly does not apply to the Debtor.  The

5  recovery under paragraph 1 of this subsection.  Again, such

6  entity shall be limited to actual damages.

7       The second circuit has stated the standard governing

8  sanction pursuant to §362(k)(1) as follows:

9       "Any delivered act taken in violation of the stay,

10  which the violator knows to be in existence justifies an award

11  of actual damages.  An additional finding of maliciousness or

12  bad faith on the part of the offending creditor warrants the

13  further imposition of punitive damages." *In re Crisan/Montane*

14  *Energy Company*, 902 F.2d 1098, 1105 (2d Cir. 1990)

15       As Judge Gonzalez has previously held "Such an act

16  need not be performed with the specific intent to violate the

17  stay." *In re Sucre*, 226 B.R. 34346 (Bankr. S.D.N.Y 1998).

18  Rather, so long as they violate or possess "general intent in

19  taking such actions, which have the effect of violating the

20  automatic stay, the intent requirement of §362(h) (it's now

21  §362(k)) is satisfied." *Id.* See also *In re Bailey*, 2007 Bankr.

22  LEXIS 2394 at page 12, and *In re Harris*, 374 B.R. 64.

23       The purpose behind this standard as to encourage

24  "would-be violators to obtain declaratory judgments before

25  seeking to vindicate their interest in violation of the

1  automatic stay, which therefore protects Debtor's estate from

2  incurring potentially unnecessary legal expenses and prosecuting

3  stayed violations."  (i.e. Intended in this section to prevent

4  self-help or shooting first and aiming later.)

5        Given, as set forth in the *Crisan/Montane* case, the

6  Court's general contempt power to punish violations of the

7  automatic stay and prevent violations from continuing, the Court

8  clearly has the power also to render coercive sanctions to

9  ensure compliance with the automatic stay in addition to the

10 power to award punitive damage and compensating the complainant

11 for losses sustained.  See *In re Ionosphere Clubs, Inc.*, 171

12 B.R. 18, 21. (S.D.N.Y. 1994).

13       The second defense raised by the objectors is that --

14 oh, I'm sorry, before going there, let me also cite *In re*

15 *Sturmin*, 2011 U.S. Distr. LEXIS 109599 (S.D.N.Y. 2011), in which

16 the district court affirmed Judge Chapman in holding that

17 obtaining an injunction in another proceeding in that case in a

18 probate court enjoining the continued conduct of a Chapter 7

19 case was in violation of the automatic stay.  And then

20 separately for the Court's discussion of actual and punitive

21 damage for violation of the stay and the bases therefore.

22       In addition, as said or started to say, the objectors

23 raise a second defense which is that the church autonomy

24 doctrine based either on the free exercise clause or the

25 establishment clause, although more likely the free exercise

1   clause and/or the First Amendment protect them from any

2   violation of the automatic stay which I found has indeed

3   occurred because of the religious nature of the beis din and the

4   allegedly religious nature of the issues that the beis din would

5   determine.  Although it's hard for me to see how a determination

6   of the claims between the Debtor through the Debtor's principals

7   and those who invoke the beis din has any religious nature

8   whatsoever.  Although conceivably bringing an action in a

9   secular court might have a religious aspect to it.

10          Although it is clear to me that it does not violate

11   the exercise of religion to bring an action in secular court, as

12   evidenced by the fact of the action before Justice Garvey in the

13   state court involving the school that occurred pre-petition and

14   it resulted in a decision against the school by Justice Garvey.

15          As a Constitutional matter, the church autonomy

16   doctrine is severely limited by Supreme Court precedent going

17   back to *Employment Division v. Smith*, 494 U.S. 872, 878-79

18   (1990), which was cited affirmatively just last year in *Burwell*

19   *v. Hobby Lobby Stores, Inc*., 134 S. Ct. 2751 (2004).  The issue

20   in Hobby Lobby was not the free exercise of religion, but rather

21   whether the government's imposition of a regulation on the

22   appellants violated the Religion Freedom Restoration Act, which

23   applies a somewhat narrower view than the general constitutional

24   law principles as outlined in the *Smith* case on government

25   actions affecting religion.  That act appears at 42 USC §2020bb-

1  1(a) and (b).  It requires a compelling government interest in

2  the exercise of the government's power.  And that that interest

3  be the least restrictive means of serving that interest.  *Id.*

4  See also *Hobby Lobby*.

5          The tests on a constitutional basis is easier to meet.

6  The focus is first on whether the law being imposed is general

7  and neural in its applicability; i.e. not aimed at the promotion

8  or restriction of religious beliefs.  And secondly that that law

9  supporting the governmental interest is narrowly tailored to

10 achieve that interest.  See generally, *Listecki v. Official*

11 *Committee of Unsecured Creditors*, 780 F.3d 781 (7th Cir. 2015).

12         Before applying that standard to the facts, I should

13 note that the *Listecki* case, as well as the second circuit have

14 concluded that the RFRA does not apply to private action, but

15 only to the government.  I believe that here it is clear that

16 the Debtors seeking to enforce the automatic stay is not

17 governmental action, but private action.  So therefore, the

18 RFRA's higher burden does not apply.

19         In addition, *Listecki* 780 F.3d at 736-740.  See also

20 *Rweyemamu v. Cote*, 520 F.3d 198, 203 (Note 2) (2d Cir. 2008),

21 and *SEC v. Madoff Investor Securities LLC*, 2015 Bankr. LEXIS

22 1843 *99-103, (Bankr. S.D.N.Y. June 2, 2015).  Here the

23 automatic stay is clearly neutral, as far as religious exercise

24 is concerned.  It applies to anyone who falls within the ambit

25 of §362(a) (i.e. anyone who commences a proceeding that would

**51**

In re Congregation Birchos Yosef - 7/1/15          78

1   fall into the two sections I've just cited).

2           It is hard to imagine how would could more narrowly

3   tailor the interest that the automatic stay protects, which

4   again is to avoid self-help and funnel all of the activity

5   covered by that stay through the bankruptcy court from the very

6   instant that the case commences until on motion or proper

7   notice.  And if the Court lifts the automatic stay in light of

8   an interest that Congress believed warranted such relief.  Or

9   potentially based upon considerations of, among other things,

10  free exercise of religion.

11          But again, to shoot first and aim later or to engage

12  in self-help obviously cannot be more easily or more narrowly

13  dealt with than by saying that such actions were in violation of

14  the stay, and of no effect unless the Court determines on the

15  proper record that they should be.  But of course the burden

16  there of at least making at least a prima facie as full relief

17  would not be on the Debtor, but instead on the movant for relief

18  from the stay.

19          Here, in addition to the clear purpose of avoiding of

20  uncertainty and confusion of potential piecemeal determination

21  of the Debtor's estate and claims against the Debtor which again

22  impairs the interest not only of the Debtor, but of the other

23  creditors of the estate.

24          The estate clearly has an interest in pursuing its

25  causes of action.  It is clear to me from the record of today's

1    hearing that while the extent of the effect of a sirov if it is

2    issued is speculative, the mere issuance of the sirov and in

3    fact the commencement of the beis din itself has adversely

4    affected the Debtor and made it more difficult for it to conduct

5    this case and puts significant pressure on the Debtor's

6    principals to not actively pursue the Debtor's claims against

7    those who invoke the beis din and potentially even to dismiss

8    the adversary proceeding.

9         They can choose to ignore the injunction that has been

10   issued and not to appear before the beis din, but it appears

11   clear to me that that choice would involve substantial courage

12   in light of the clear and imminent harm that would result to

13   them in doing so.

14        The record has been made clear, as far as I'm

15   concerned at least, the issuance by this particular beis din of

16   the injunction and the sirov, if the beis din is permitted to

17   continue, would have an adverse effect on the Debtor's estate

18   and creditors.  There's no question to me that those who invoked

19   the beis din knew that.  And that they are engaging in

20   considerable hypocrisy and (inaudible) to the contrary.

21        The governmental interest in the automatic stay is not

22   solely a congressional interest, although that would sufficient

23   under the case law that I've already cited.  It ultimately

24   hinges on another constitutional interest.  That is the interest

25   set forth in Article 1, Clause 8 of the Constitution, that

**53**

1   Congress shall have the power to enact uniform laws on

2   bankruptcy, which as I said during the oral argument, was a

3   primary and perhaps the primary reason for the founders to

4   determine that they needed to have a more uniform power for the

5   federal government so that debts would not be repudiated by the

6   various states as was occurring under the Articles of

7   Confederation.

8        That power alone is sufficient or has been sufficient

9   in other contexts under the Bankruptcy Code to override not only

10   the free exercise and establishment of clauses of the

11   Constitution and related Article 1, free speech clauses, but

12   generally the First Amendment free speech.  See for example, *In

13   re Andrus* 184 B.R. 311, 315 (Bankr. N.D. Ill.)  *Aff'd* 189 B.R.

14   413, 416 (N.D. Ill. 1995).

15        And the cases cited by the sole authority in a

16   bankruptcy context, relied by the objectors on this basis;

17   Michael A. Helfand: Fighting for the Debtor's Soul: Regulating

18   Religious Commercial Conduct, 19 George Mason Law Review 157

19   (Fall 2011.)  In that article, Professor Helfand cites, in

20   addition to *Andrus*, *In re Sechuan City, Inc.*, 96 B.R. 37, 43

21   (Bankr. E.D. Pa. 1989) for the proposition that the First

22   Amendment right of free speech is trumped where it falls, as I

23   believe here is the case, into a conduct that is coercive either

24   in terms of violating the discharge, or violating the automatic

25   stay.

**54**

1    Also cited by Professor Helfand, see *In re Baumblit*,

2    15 F. App'x 30, 36-37 (2d Cir. 2001) ("It is well settled that

3    First Amendment rights are not immunized from regulation when

4    they are used as an integral part of conduct which violates a

5    valid statute.")  As well as In re Collier, 410 B.R. 464, 474

6    (Bankr. E.D. Tex. 2009) ("[T]he automatic stay and the

7    restrictions contained therein focus not upon speech but rather

8    upon the restraint of actions -- actions that threaten the core

9    objectives of the Bankruptcy Code and the judicial system

10   designed to achieve those objectives.").

11       Professor Helfand is incorrect in stating that there

12   are no cases in the bankruptcy context dealing with beis dins or

13   generally free expression of religion.  As I've noted the

14   *Listecki* case did so, although he can't be faulted for that

15   since that occurred after he wrote his article.  Let's see also

16   *In re Scroggins*, B.R. 727, 731 (Bankr. D. Ariz. 1997).

17       Notwithstanding citing all of the law that is actually

18   out there correctly, Professor Helfand then goes on to state his

19   opinion that invoking the beis din to ensure payment of a debt,

20   although such action would violate the automatic stay, would, as

21   a religious communities' imposition of social sanctions (i.e.

22   aimed at upholding religious rules and values regarding the

23   repayment of debts) implicate decisively the type of "core

24   religious discipline" that the church autonomy doctrine protects

25   from regulation.

55

1       Frankly, I think he pulled this largely out of a hat.

2  But in any event, he ignores the fact that this is not simply a

3  statute designed to protect the Debtor who may have under some

4  theory subjected himself or herself to independent religious

5  restrictions, but also the Debtor's estate and creditors who

6  clearly did not.  That is the type of governmental interest that

7  under the Supreme Court and lower court precedents must be

8  recognized.  Accordingly, that objection is also overruled.

9       That leaves the issue of sanctions.  It is correct

10  that I should determine the actual dollar amount of sanctions at

11  a different hearing at which not only at issue would the amount

12  of actual damages, but also whether any punitive damages should

13  be awarded and the amount of such damages.  But I should address

14  the issue of compliance going forward.  As I noted in citing

15  Judge Mukasey in the *Ionosphere* case, the Court clearly has the

16  power to issue conditional coercive sanctions to ensure

17  compliance with the statute.  Here, given the continued pursuit

18  of the beis din, notwithstanding the warnings that were

19  received, and the continued assertion by the objections, I have

20  some concern that notwithstanding my ruling, they would not

21  withdraw their request of the beis din and that the beis din

22  would proceed.  As I noted during oral argument, courts are

23  reluctant to issue anti-suit injunctions of another court or

24  tribunal, notwithstanding the fact that it is the case here that

25  the beis din, I believe, issued its own anti-suit injunction

1  improperly.  So I will not directly impose coercive sanctions on

2  the beis din.  I will only note that just as its actions thus

3  far have been void *ab initio*, any rulings going forward would be

4  too.  I will however, impose coercive sanctions on each of the

5  individuals named in the motion, as well as the school giving

6  them until the close of business tomorrow to instruct the beis

7  din to cease.  And that sanction for each one of them will be

8  $10,000 a day until they do that instruction.  That's a several

9  obligation, 10,000 for each person and the school since I

10  believe it would only take one of them not complying to continue

11  this morass any further.  So you can put that on the order, Mr.

12  Pick.

13          MR. PICK:  I will.  Thank you.

14          THE COURT:  But there does not need to be a written

15  order which probably would not get entered until tomorrow in any

16  event for that sanction to start running today.  So you all have

17  till the close of business tomorrow to send instruction to the

18  beis din to no longer function on this matter.  That your

19  clients are not seeking that relief.  Of course this is without

20  prejudice to any of those clients' rights in respect of the

21  adversary proceeding pending before the Court.  So I'm going to

22  ask you to prepare an order, Mr. Pick, granting that relief.

23  You don't need to formally settle it on the other side, but you

24  should cc counsel when you email it to chambers so they can make

25  sure it's consistent with my ruling.

In re Congregation Birchos Yosef - 7/1/15                    84

1        MR. PICK:  Will do.

2        THE COURT:  Now, I would like to address something

3    more practical, which is where this case is going.  It's not

4    clear to me whether this is a case solely about money or not.

5    But I strongly urge the parties to stop procedural maneuvers and

6    sit down and negotiate a settlement of the money if they can.

7        There are clearly many third parties here, including

8    children who will be adversely affected by procedural maneuvers

9    and what appears to me to be a state of affairs that probably is

10   not susceptible court of intervention but that is poisoning the

11   atmosphere.  You all should sit down and resolve those issues if

12   you can.  You may not be able to.  Maybe there are issues that

13   go beyond money here.  Where people using their good will cannot

14   resolve them.  But I would urge you all to use your good will to

15   do that.  You all do live in the same community.  But in the

16   meantime, the litigation will proceed.  I'm just hoping that you

17   will determine to put it on hold for a brief period to try to

18   resolve this.

19       Okay.  Now, I think we had a discovery conference too

20   with a smaller subset?

21       UNKNOWN:  Your Honor, just before we go to discovery,

22   just on your last note.  Just as a housekeeping note and to ride

23   on the coattails on what you were saying about possibly sitting

24   down to settle; some of the Defendants in the adversary

25   proceeding have different dates to respond to respond to the

58

93

CERTIFICATION

1

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6    Dated:  July 6, 2015

7

8                              _____

9                              Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| Witnesses | Direct | Cross | Redirect | Re-Cross |
|---|---|---|---|---|
| Cheskel Landau | | | | |
| By the Court | 55 | | | |
| By Mr. Wagner | | 54 | | |
| By Mr. Tokayer | | 56/60/66 | | |
| By Mr. Pick | | 57/64 | | |

INDEX                                    94

E X H I B I T S

| Nos | Description | Marked | Admit |
|---|---|---|---|
| | No exhibits. | | |

**60**