UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

CONGREGATION BIRCHOS YOSEF,

                                  Debtor.

**OPINION AND ORDER**

15-CV-6408 (CS)

-------------------------------------------------------------------x
BAIS DIN OF MECHON L'HOYROA,

                              Appellant,

           - against -

CONGREGATION BIRCHOS YOSEF,

                              Appellee.
-------------------------------------------------------------------x

Appearances:

Y. David Scharf
Joseph T. Moldovan
Robert K. Dakis
Morrison Cohen LLP
New York, New York
*Counsel for Appellant*

Michael Levine
Levine & Associates, P.C.
Scarsdale, New York
*Counsel for Appellee*

Burt Neuborne
New York University
New York, New York
*Counsel for* Amici Curiae *Richard Epstein, Arthur J. Gonzalez, Michael McConnell and Burt Neuborne*

Seibel, J.

      Before the Court is the appeal of Bais Din of Mechon L'Hoyroa ("Bais Din" or "Appellant"), (Doc. 1), from the Bankruptcy Court's July 2, 2015 Order (the "Order") granting the motion of Congregation Birchos Yosef ("Congregation," "Debtor" or "Appellee") to enforce

the automatic stay pursuant to 11 U.S.C. § 362(a) against Bais Chinuch L'Bonois, Inc. ("Bais Chinuch"), Abraham Schwartz, Yechiel Yoel Laufer and Yisroel David Rottenberg,[1] (Bankr. Doc. 81).[2]  The Court holds that Bais Din lacks standing to appeal the Order.  Accordingly, the appeal is dismissed.

I. BACKGROUND

A. Factual Background

Only the facts relevant to this appeal will be discussed.  On February 26, 2015, Appellee, a Hasidic Jewish congregation in Rockland County, (App. Mem. 1),[3] filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York, (Bankr. Doc. 1).  As part of the bankruptcy proceeding, the Debtor thereafter commenced adversary proceedings against Bais Chinuch, a Jewish school, and associated individuals, asserting "various claims for fraud, breach of fiduciary duty and looting of the Debtor's assets."  (Final Decision at 2;[4] *see* Congregation Mem. Ex. 2 (Complaint in adversary proceeding); *id.* Ex. 3 (Amended Complaint in adversary proceeding).)[5]

In response to the adversary proceeding, Bais Chinuch and other named defendants – Schwartz, Laufer and Rottenberg, (App. Mem. 5) – invoked a *beis din*[6] "which, (a) 'invited,' or issued a *hazmana* to, the Debtor's principals, though not the Debtor itself, to participate in a *beis*

---

[1] The Court will refer to Bais Chinuch and the three individuals collectively as the "Contemnors."

[2] "Bankr. Doc." refers to documents filed in the U.S. Bankruptcy Court for the Southern District of New York under docket number 15-BK-22254.

[3] "App. Mem." refers to the Brief for Appellant Bais Din of Mechon L'Hoyroa, (Doc. 17).

[4] "Final Decision" refers to Judge Robert D. Drain's August 24, 2015 written Memorandum of Decision, (Bankr. Doc. 123).

[5] "Congregation Mem." refers to the Brief for Debtor-Appellee Congregation Birchos Yosef, (Doc. 22).

[6] A *beis din* – "house of judgment" in Hebrew – also referred to as *beth din*, is a Jewish court of law.  *Beth din*, Dictionary.com, http://www.dictionary.com/browse/beth-din (last visited Sept. 26, 2016).

2

*din* proceeding regarding the parties' dispute – i.e., the subject matter of the adversary proceeding – and (b), enjoined the Debtor's principals, through an *ekul*, from continuing to pursue the adversary proceeding" in the bankruptcy court. (Final Decision at 2.)[7]  The *hazmana* or "invitation" directed at the Debtor's principals stated:

> The administrators of Bais Chinuch L'Bonois, Inc "Bas Melech" have come before us, and showed us that you have brought before the secular courts, the litigation and quarrel that you have with the Administrators of the aforementioned school, and also you are continuing to bring more and more complaints.  And also, R'Avraham Moshe Schwartz, R'Yechiel Yoel Laufer, and R'Israel Rottenberg have come before us, and they have shown us, that you have brought before the courts, a litigation against them personally, and according to their words, you are causing them great damage, against the law of the Torah.
>
> We invite you, at the request of the aforementioned plaintiffs, to present yourselves immediately, before our Bais Din, to arbitrate according to the religious law of the Torah, regarding going to secular court, and regarding the claims that you have between yourselves . . . .
>
> And we hereby restrict continuing the claims before the secular courts, and you are required to stop immediately the claims, until the matter will be clarified before a Jewish Bais Din.

(Bankr. Doc. 67, Ex. 1 (first *hazmana*); *see id.* Ex. 3 (second *hazmana* with same language as first).)  Although these *hazmanot* do not specifically mention the consequences if the Debtor's principals fail to appear before the Bais Din, the parties seem to agree that if a congregant refuses to appear after the issuance of multiple *hazmanot*, the Bais Din can issue a *siruv*.[8]  (App. Mem. 5; Congregation Mem. 2.)  The Debtor's counsel informed Bais Chinuch and the individuals who had invoked the *beis din* that they had violated the automatic stay and should stop the

---

[7] A *hazmana* is the *beis din*'s equivalent of a judicial summons.  (Final Decision at 2; App. Mem. 5.)  An *ekul* is an injunction issued by Jewish courts.  (Final Decision at 2; Congregation Mem. 3.)

[8] Appellant describes a *siruv* as "the equivalent of a contempt decree," (App. Mem. 5), one of the consequences of which is exclusion of the congregant and his family from community functions, including worship and school, (Bankr. Doc. 86, at 64:11-65:19; Final Decision at 3-4.)

3

proceeding. (Final Decision at 3.) They did not, however, withdraw the request to the Bais Din for relief or seek to have the *ekul* vacated. (*Id.*)

On June 26, 2015, the Debtor filed a motion in the Bankruptcy Court to enforce the automatic stay against the Contemnors, requesting that the Court impose actual and punitive damages, vacate the *hazmanot* issued by the Bais Din, and permanently enjoin the Contemnors or any religious court from issuing a *siruv* or from commencing or continuing any religious proceedings against the Debtor or its officers. (Bankr. Doc. 67; *see* Final Decision at 4.)

### B. Bankruptcy Court's Decision

On July 1, 2015, after notice, the Bankruptcy Court held a hearing at which the automatic stay and the effects of the *beis din* proceeding and the *siruv* were discussed. (*See* Bankr. Doc. 86.) The Court issued an oral ruling granting the Debtor's motion to enforce the automatic stay against the Contemnors pursuant to 11 U.S.C. § 362(a), (*see id.*), and on the following day issued a written Order memorializing that ruling, (Bankr. Doc. 81).

The Order stated that the Contemnors violated the automatic stay under 11 U.S.C. § 362(a)(1) and (a)(3) by, among other things, "initiating and prosecuting after the commencement of this chapter 11 case a Rabbinical Court or *Bais Din* proceeding . . . to determine the Contemnors' claims against the Debtor and the Debtor's claims against them." (*Id.*) The Court further declared each of the Contemnors in contempt of court for willfully violating the automatic stay, and ordered the Contemnors to take such action as required to discontinue the Bais Din, vacate all *hazmanot* and/or *siruv* or other orders issued by the Bais Din, and vacate any restraining order or decree purporting to prohibit the Debtor or its officers or principals from continuing the prosecution of the adversary proceedings in the Bankruptcy Court. (*Id.*) The Court directed the Contemnors to file affirmations of compliance with its

4

directives, and held that failure to comply with those directives would result in a sanction of $10,000 per day per contemnor. (*Id.*) The Court also declared any injunction, *siruv* or other order or decree issued by the Bais Din after the commencement of the Debtor's bankruptcy in furtherance of the Contemnors' violation of the automatic stay to be void *ab initio* and "of no force or effect." (*Id.*)

Judge Drain further explained his reasoning in a written Memorandum of Decision.[9] He found that "the mere threat of the issuance of a *sirov*, and . . . the commencement of the *beis din* proceeding itself . . . adversely affected the Debtor, through its principals, and made it more difficult to conduct this [bankruptcy] case by exerting significant pressure to cease pursuing the Debtor's claims against those who invoked the *beis din*." (Final Decision at 3-4.) He further found that although the Debtor's principals were legally free to ignore the *hazmanot* and the *ekul* and pursue their claims in the adversary proceeding as part of their bankruptcy case, they would face social consequences in their community, including harassment and possible expulsion of their children from religious school if they chose to do so. (*Id.* at 4.) The Court found that the automatic stay prohibited the invocation of proceedings in any court, including a *beis din*,

---

[9] The transcript of the Bankruptcy Court's July 1, 2015 bench ruling, (Bankr. Doc. 86), was amended and superseded by the Final Decision dated August 24, 2015, (Bankr. Doc. 123, *In re Congregation Birchos Yosef*, 535 B.R. 629 (Bankr. S.D.N.Y. 2015)). Appellant argues that the "Bankruptcy Court lacked jurisdiction to enter the Memorandum Opinion" because it was issued after the Notice of Appeal was filed and served, and therefore should not be considered on appeal. (App. Mem. 8 n.3.) It is appropriate for an appellate court to consider the written findings of a lower court, even if they were issued after a notice of appeal has been filed. *See Blaine v. Whirlpool Corp.*, 891 F.2d 203, 204 (8th Cir. 1989) (appellate court could consider written findings of fact and law issued by district court one week after appellants filed notice of appeal); *Silverthorne v. Laird*, 460 F.2d 1175, 1178 (5th Cir. 1972) (district court retains "full authority to take any steps during the pendency of the appeal that will assist the court of appeals in the determination of the appeal") (internal quotation marks omitted); *In re Garner*, 113 B.R. 352, 353 (Bankr. N.D. Ohio 1990) (issuance of written opinion after notice of judgment had been appealed was "particularly useful" when doing so did not "delay or impede the appeal or impose upon any party an element of unfair surprise inconsistent with the adversary process"). Judge Drain's written opinion "is consistent with the court's oral opinion in all material respects and the written findings assist this Court in determining the appeal." *Blaine*, 891 F.2d at 204. Further, the written opinion has not delayed or impeded the appeal, nor were the parties prejudiced, as their briefs were filed months after the written opinion was issued. Accordingly, I may properly consider the August 24, 2015 written Memorandum of Decision. (Bankr. Doc. 123.)

regarding the subject of the adversary proceedings, and that application of the automatic stay to the Bais Din did not violate the Free Exercise or Establishment Clauses of the First Amendment to the U.S. Constitution.  (*Id.* at 17-18.)  The Court held that the amount of damages – including the possibility of punitive damages – would be discussed at a future hearing, but that coercive sanctions would be imposed if the Contemnors did not comply with the Bankruptcy Court's ruling.  (*Id.* at 20-21.)

## II.   DISCUSSION

### A. Legal Standard

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*.  *Overbaugh v. Household Bank N.A.* (*In re Overbaugh*), 559 F.3d 125, 129 (2d Cir. 2009) (*per curiam*); *see W. Milford Shopping Plaza, LLC v. The Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, No. 14-CV-4170, 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015) ("On appeal, the [district] court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'") (quoting former Fed. R. Bankr. P. 8013).[10]  "Mixed questions of fact and law are subject to *de novo* review."  *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.* (*In re Parmalat*), 639 F.3d 572, 580 (2d Cir. 2011).

---

[10] As Judge Roman explained in *In re Great Atlantic & Pacific Tea Co.*, although the Federal Rules of Bankruptcy Procedure were amended in 2014 and no longer include the language quoted above, "logic still compels the same conclusion with respect to the appellate powers of the District Court."  2015 WL 6395967, at *2 n.1.

### B. Jurisdiction

A threshold question in determining this appeal, however, is whether Appellant has standing to bring it.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention.") (internal quotation marks omitted); *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387-88 (2d Cir. 1997) ("Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 468 B.R. 603, 612 (S.D.N.Y. 2012) (standing is "threshold question" in bankruptcy appeal).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Bender*, 475 U.S. at 546 n.8 (internal quotation marks omitted); *see Fletcher v. Ball (In re Sound View Elite Ltd.)*, No. 14-CV-8615, 2015 WL 2166023, at *4 (S.D.N.Y. May 8, 2015) ("The appellant bears the burden of demonstrating that he has standing to appeal.").

Although the parties did not address the issue of standing in their papers, and Appellee in passing noted that it "assumed *arguendo* that Appellant has standing to prosecute [the] appeal," (Congregation Mem. 5 n.3), "the standing issue may be raised . . . by a court on its own initiative, at any stage in [a] litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotation marks omitted); *see Mental Hygiene Legal Serv. v. Cuomo*, 13 F. Supp. 3d 289, 298 (S.D.N.Y. 2014) ("The Court will address a standing argument even if the parties fail to raise the issue, because [t]he question of standing is not subject to waiver.")

(alteration in original) (citation and internal quotation marks omitted), *aff'd*, 609 F. App'x 693 (2d Cir. 2015) (summary order).[11]

Under Article III of the U.S. Constitution, a plaintiff (1) "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations in original) (footnote, citations and internal quotation marks omitted).

"The current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution." *DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 88 (2d Cir. 2011). The Second Circuit and other courts, however, have "'adopted the general rule, loosely modeled on the former Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be "a person aggrieved" – a person "directly and adversely affected pecuniarily" by the challenged order of the bankruptcy court.'" *Id.* at 88-89 (quoting *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)). Thus an appellant "must show not only injury in fact under

---

[11] Appellee's counsel argued that the Bais Din lacked standing to bring the appeal in a September 29, 2015 letter discussing whether the Bais Din's appeal should be consolidated with the appeals of Abraham Schwartz, (15-CV-6849), and Bais Chinuch, (15-CV-6827). (Doc. 8, at 2 n.2.) On November 4, 2015, the Court allowed Mr. Schwartz and Bais Chinuch to withdraw their appeals without prejudice, (*see* Doc. 15), and the Court is not aware of Mr. Schwartz or Bais Chinuch renewing these appeals, the underlying dispute having apparently been settled. (*See* Bankr. Docs. 165, 190.) Although the Court permitted the instant appeal pursuant to its authority under 28 U.S.C. § 158(a) and set a briefing schedule, (Doc. 12), the Court did not rule on whether the Bais Din has standing to bring the appeal. In any event, the Court must have subject matter jurisdiction over any appeal, and it is appropriate for the Court to determine standing at any stage of a litigation. *See Carter*, 822 F.3d at 56.

Article III but also that the injury is direct[] and financial." *Id.* (alteration in original) (internal quotation marks omitted); *see Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641 (2d Cir. 1988) ("A person who seeks to appeal an order of the bankruptcy court must be directly and adversely affected pecuniarily by it.") (internal quotation marks omitted); *see also Fid. Bank, Nat. Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) ("person aggrieved" doctrine "limits standing to persons with a financial stake in the bankruptcy court's order").[12]

In the bankruptcy context courts have held that the "standing limitation is more exacting that the constitutional case or controversy requirement imposed by Article III, for under the constitutional injury in fact test, the injury need not be financial, and need only be fairly traceable to the alleged illegal action." *Johns-Manville Corp.*, 843 F.2d at 642 n.2 (citation and internal quotation marks omitted). The stricter standing test in bankruptcy "is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 242 (2d Cir. 2013) (internal quotation marks omitted); *see Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983) ("Efficient judicial administration [of the bankruptcy estate] requires that appellate review be limited to those persons whose interests are directly affected.").

A party appealing a bankruptcy order "must also establish prudential standing, meaning . . . that he must assert his own legal rights and interests and not those of third parties."

---

[12] In addition to the "pecuniary interest" test for standing in the bankruptcy context, a party may also assert standing under the "public interest" test. *In re DBSD*, 634 F.3d at 89 n.3. "'[S]tanding to appeal under the Bankruptcy Act as a "party aggrieved" may arise from a party's official duty to enforce the bankruptcy law in the public interest.'" *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2d Cir. 2010) (alteration in original) (quoting *U.S. Trustee for the W. Dist. of Va. v. Clark (In re Clark)*, 927 F.2d 793, 796 (4th Cir. 1991)). This test has been used to confer standing on the United States Trustee, *see id.*, and the Securities and Exchange Commission, *see S.E.C. v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459-60 (1940). Here, however, the Bais Din has not argued it has standing pursuant to the public interest test, and it does not have an "official duty to enforce the bankruptcy law," *In re Clark*, 927 F.2d at 796, so it is not entitled to bring this appeal pursuant to this standard.

*In re DPH Holdings*, 648 B.R. at 612 (internal quotation marks omitted); *see In re Quigley Co., Inc.*, 391 B.R. 695, 705 (Bankr. S.D.N.Y. 2008) ("[T]he objecting party can only challenge the parts of the plan that directly implicate its own rights and interests."). Courts have noted that "'[p]rudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan.'" *In re DPH Holdings*, 648 B.R. at 612 (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010)). "[C]ourts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights." *Johns-Manville Corp.*, 843 F.2d at 644.

The Order enforced the automatic stay against the individuals and entity that initiated proceedings before the Bais Din, directed them to take the steps necessary to stop the proceedings before the Bais Din, and voided *ab initio* any injunction, *siruv* or other order or decree issued by the Bais Din against the Debtor or the Debtor's principals or officers after the commencement of the bankruptcy proceeding. Its rulings were directed at and directly affected only the Debtor, its principals, and the Contemnors.[13] The Bais Din was not a party in the Bankruptcy Court proceedings,[14] but has appealed the Bankruptcy Court's decision, while the Contemnors – the parties required to take action and who risked contempt sanctions as a result of the Bankruptcy Court ruling – are not parties to the appeal. Any effect on the Bais Din from that decision is indirect, seeks to challenge orders directed at third parties, and is insufficient to

---

[13] The Order directed the Contemnors to discontinue the proceedings and voided *ab initio* decrees issued by the Bais Din purporting to require action by the Debtor's principals, but did not enjoin the Bais Din from future action. During the July 1, 2015 hearing, the Debtor specifically withdrew its request "for a permanent injunction" of future *hazmanot* issued by the Bais Din. (Bankr. Doc. 86, at 31:16-19.)

[14] Counsel appeared on behalf of the Bais Din at the July 1, 2015 Bankruptcy Court hearing where Judge Drain issued his oral ruling on the enforcement of the automatic stay, (Bankr. Doc. 86, at 3:15-16), but there is no indication that it is a party to the action or a creditor.

confer standing. *See Montesa v. Schwartz*, No. 14-CV-3721, 2016 WL 4728000, at *8 (2d Cir. Sept. 12, 2016) (plaintiffs lacked standing where injury was indirect – "too far removed, too attenuated" from complained-of act).

Further, even if there were a direct effect, it is not pecuniary. The Bais Din, which has the burden of proving it has standing to bring this appeal, *see In re Sound View Elite*, 2015 WL 2166023, at *4, has not alleged any financial impact on it as a result of the Order. Nor does it seem that the Bais Din, as a religious tribunal that adjudicates disputes between members of the ultra-Orthodox community, could have any financial stake in the Debtor's bankruptcy proceedings.

Appellant argues that "[t]he Bais Din is a gatekeeper who ensure [*sic*] that community members can seek to enforce community standards and Jewish law," and that the Bankruptcy Court's Order enforcing the automatic stay "interferes with this function." (Doc. 31, at 3.) This contention underscores the lack of any direct, financial impact the Bankruptcy Court's Order has had – or could have – on the Bais Din, and shows that the Bais Din is attempting to assert the purported right of the Contemnors to adjudicate their dispute with the Debtor in a religious court. This is impermissible in any context, *see Carlen v. Dep't of Health Servs. of Suffolk Cty., N.Y.*, 912 F. Supp. 35, 42 (E.D.N.Y.) ("[A] litigant has no standing to assert the constitutional rights of others.") (citing *Warth*, 422 U.S. at 499), *aff'd*, 104 F.3d 351 (2d Cir. 1996), and certainly in the bankruptcy context where the "standing limitation is more exacting" than Article III standing, *Johns-Manville*, 843 F.2d at 642 n.2, because of the "understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order," *id.* at 642; *see In re Fondiller*, 707 F.2d at 443 (need for limiting standing in bankruptcy appeals "springs from

the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation"). The Bais Din is such a party that is indirectly affected by the Bankruptcy Court's Order without any "direct[]" or "adverse[]" pecuniary interest. *See Rensselaer Polytechnic Inst.*, 936 F.2d at 747.

That the Bais Din claims that its or its constituents' constitutional right to the free exercise of religion was impaired by the Bankruptcy Court's ruling does not give it standing. *See Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 608-09 (7th Cir. 1998) (alleged infringement of First Amendment right to free expression as result of Bankruptcy Court order insufficient to confer standing; injury must be pecuniary).[15]

Accordingly, this Court lacks jurisdiction to decide this appeal. *See ACE Am. Ins. Co. v. Old HB, Inc. (In re Old HB, Inc.)*, 525 B.R. 218, 225 (S.D.N.Y. 2015) ("Standing to appeal from a bankruptcy order requires that the party seeking to appeal demonstrate *actual* injury, and that such injury be financial and a *direct* result of the Court's order.") (emphasis in original); *In re Indu Craft, Inc.*, No. 11-CV-6305, 2014 U.S. Dist. LEXIS 143374, at *10, *14 (S.D.N.Y. Sept. 29, 2014) (appellant lacked standing where bankruptcy order "did not dispose of Appellant's pecuniary interests" and appellant could not "show that the properly challenged Orders directly and adversely affected its pecuniary interest"), *aff'd*, 630 F. App'x 27 (2d Cir. 2015) (summary order); *In re Victory Mkts., Inc.*, 195 B.R. 9, 15-16 (N.D.N.Y. 1996) (appellant lacked standing under 11 U.S.C. § 1109(b) because "[n]owhere . . . does Appellant explicitly contend that the

---

[15] Moreover, that the Bais Din's appeal raises constitutional questions underscores the importance of the issue of standing and this Court's jurisdiction over the appeal. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Because the Bais Din lacks standing to bring this appeal, the constitutional questions raised in it need not, and indeed cannot, be decided at this time.

12

challenged Order directly or adversely affected its pecuniary interests" and any effect on appellant's pecuniary interest was "unsubstantiated, speculative, and indirect").

Appellant is a rabbinical court of religious law, yet seeks to assert rights in this appeal as if it were a typical party in a litigation. Although Appellant acknowledges that this is an "extraordinary" request, (Doc. 31, at 3) – for one court to appeal another court's decision – it does not offer any authority showing that it has standing to do so. Allowing the Bais Din to bring the instant appeal is akin to allowing an arbitrator to appeal a court's decision voiding an arbitration clause or allowing a state court to appeal the removal of a case to federal court. There is simply no precedent for this type of appeal. Tribunals serve as neutral arbiters – whether of state, federal or religious law – and are merely forums for the resolution of disputes when their mechanisms are invoked by persons or entities who believe themselves to have been injured or aggrieved. They do not themselves have standing as aggrieved or injured persons.

### III. CONCLUSION

For the reasons set forth above, the Bais Din lacks standing to bring this appeal and the Court thus lacks jurisdiction. Accordingly, the appeal is dismissed. The Clerk of Court is respectfully directed to docket this decision and close the case.

**SO ORDERED.**

Dated: September 27, 2016
   White Plains, New York

              _____
              CATHY SEIBEL, U.S.D.J.